Norma Sy OBITZ, Petitioner,

v.

DISTRICT DIRECTOR OF the IMMI-
GRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 78–2043.

United States Court of Appeals,
Ninth Circuit.

June 16, 1980.

Rehearing Denied Aug. 15, 1980.

Robert P. F. L. Tan, Los Angeles, Cal., for petitioner.

Carolyn M. Reynolds, Dzintra I. Janavs, Asst. U. S. Attys., Los Angeles, Cal., for respondent.

Before WRIGHT, CHOY, GOODWIN, WALLACE, SNEED, KENNEDY, ANDERSON, HUG and TANG, Circuit Judges.

SNEED, Circuit Judge:

Norma Sy Obitz seeks review of the denial of her motion to reopen deportation proceedings to allow her to apply for adjustment of status to that of permanent resident alien. Obitz had filed a previous motion to reopen, which was denied by the Board of Immigration Appeals. Obitz now alleges changed circumstances because a visa petition filed on her behalf by her

United States citizen spouse has been approved by the Immigration and Naturalization Service (Service).

Obitz's petition to reopen her deportation hearings establishes her statutory eligibility for relief under section 245 of the Immigration and Naturalization Act, 8 U.S.C. § 1255 (1976). She asserts that the altered circumstances which established her statutory eligibility under section 245 require that the Service reopen deportation proceedings under the authority of *Urbano de Malaluan v. INS*, 577 F.2d 589 (9th Cir. 1978). We hold to the contrary. Therefore, we dismiss the petition for review.

## I.

### FACTS

Obitz, a Philippine citizen, entered the United States in 1970. Obitz conceded in deportation proceedings in 1971 that she was subject to deportation. In February 1977 Obitz was under a final order to depart the United States by March 18, 1977. However, on February 26, 1977 she married a United States citizen. Her husband filed a petition to accord Obitz immediate relative status, and Obitz moved to reopen her deportation hearing so that she could request extended voluntary departure while the petition was being considered. This request was denied by the Board of Immigration Appeals. In an unpublished decision, this court affirmed the Board's decision.

On December 10, 1977 the Service approved the visa petition filed on behalf of Obitz by her husband. Obitz filed a new motion to reopen her deportation hearing, alleging that the approval of the visa petition made her statutorily eligible for an adjustment of status. The Board of Immigration Appeals denied her request to reopen, and Obitz filed a timely petition for review with this court.

## II.

### ELIGIBILITY FOR ADJUSTMENT OF STATUS

An alien requesting an adjustment of status pursuant to section 245 must demonstrate: (1) that he has applied for an adjustment of status; (2) that he is eligible to receive an immigrant visa and is admissible to the United States; and (3) that an immigrant visa is immediately available to him at the time his application is filed. 8 U.S.C. § 1255. Whether an alien has satisfied these statutory criteria is a question "of law and fact and is determined by specific statutory standards." *Marino v. INS*, 537 F.2d 686, 690 (2d Cir. 1976). Once an alien has demonstrated statutory eligibility for adjustment of status, the Attorney General must then exercise his discretion to grant or deny the requested adjustment of status. *Id.*

Obitz argues that her deportation hearing should be reopened to allow the Service to address the merits of her application because the approval of the visa petition filed by her spouse demonstrates her eligibility for the relief sought. Although the Service argues that Obitz is not entitled to discretionary relief, it does not dispute the fact that the approval of Obitz's visa petition establishes her statutory eligibility for an adjustment of status.

## III.

### INAPPLICABILITY OF MALALUAN AND WANG

The teaching of *Urbano de Malaluan, supra,* and *Jong Ha Wang v. INS*, 622 F.2d 1341 (9th Cir. 1980) (en banc), is not applicable to the motion of Obitz to reopen for adjustment of status pursuant to section 245. The reason is that eligibility for adjustment of status does not involve a discretionary determination. Eligibility turns on compliance with fixed statutory standards.

On the other hand, to establish statutory eligibility for suspension of deportation under 8 U.S.C. § 1254(a)(1) (1976), as in *Malaluan* and *Wang,* requires that the Attorney General find that deportation would result in extreme hardship to the alien or his spouse, parent, or child who is a United

States citizen. That is, to establish statutory eligibility under section 1254(a)(1) discretion must be exercised.

Under *Malaluan* and *Wang* we concluded that because statutory eligibility for suspension of deportation was a discretionary determination, it would be difficult to determine actual eligibility without a hearing. Thus, to obtain a reopening of deportation proceedings an alien need only present a prima facie case of eligibility; if such a prima facie case were presented and the proceedings were reopened, the Attorney General could then determine at the reopened hearing both statutory eligibility and whether discretionary relief should be granted.[1] Under the facts of this case it is not necessary to conduct a hearing to determine whether Obitz has established statutory eligibility. That she has done so is admitted by the Service. The proper inquiry is whether Obitz has presented new evidence that bears on whether the Attorney General should exercise his discretion to adjust her status now that her statutory eligibility has been established. We hold that she has not done so. Aside from establishing her eligibility as the result of an essentially ministerial act of the Service, the facts remain substantially as they were when previously we reviewed the Board of Immigration Appeals' refusal to reopen her deportation proceedings.[2]

Under these circumstances the Board's refusal in this proceeding to reopen her deportation proceedings was proper. To have done so would have been futile. If the Board previously did not abuse its discretion in refusing to reopen Obitz's deportation proceedings, its refusal to do so in this proceeding is also no abuse.

PETITION DISMISSED.

TANG, Circuit Judge, dissenting, with whom HUG, Circuit Judge, concurs:

I cannot agree with the majority's position that *Urbano de Malaluan v. INS*, 577

1. Of course, an application to reopen must be based upon newly discovered material evidence that was not available and could not have been discovered at the former hearing. *Wosough-Kia v. INS*, 597 F.2d 1311, 1312 (9th Cir. 1979).

2. Our disposition of the previous petition for review by Obitz, No. 77–1785, was, as mentioned above, unpublished. In the interest of clarity and completeness, the entire disposition is as follows:

Before: ELY, WRIGHT and CHOY, Circuit Judges.

Obitz seeks review of a decision of the Board of Immigration Appeals (BIA) refusing to re-open her deportation proceedings in order to consider her application for a stay of deportation or voluntary departure. We affirm.

Obitz is a native and citizen of the Philippines. In 1971, she was found deportable and granted voluntary departure. She is presently under a final order of deportation of March 24, 1977 and has been denied adjustment of status. A petition for habeas corpus has likewise been denied.

On February 26, 1977 she married an American citizen who submitted a visa petition on her behalf. This petition is presently unadjudicated. She then petitioned to reopen the BIA proceedings so that she could apply for a stay of deportation or extended voluntary departure until such time as the visa petition was acted upon. The BIA refused to re-open and Obitz appealed to this court.

The decision to permit re-opening of proceedings before the BIA is discretionary and this court can review only for abuse, *Lee v. INS*, 550 F.2d 554 (9th Cir. 1977), *Hun Chak Sun v. INS*, 415 F.2d 791 (9th Cir. 1969), *cert. denied*, 397 U.S. 908, 90 S.Ct. 905, 25 L.Ed.2d 89 (1970). Whether there has been abuse depends in part on an estimate of the likelihood that the applicant will receive the relief sought if re-opening is permitted.

In this case, it is highly unlikely that Obitz would be granted a stay of deportation or voluntary departure. She has been granted voluntary departure on three previous occasions and has failed to depart. The only factors she points to as grounds for a stay of deportation are her marriage to an American citizen and the pending visa petition.

A pending visa application does not entitle an alien to a stay of deportation, *Armstrong v. INS*, 445 F.2d 1395 (9th Cir. 1971), and Obitz's marriage, contracted long after she knew she was under an order of deportation, does not create substantial equities in her favor. We conclude that the BIA did not abuse its discretion in refusing to re-open.

AFFIRMED.

F.2d 589 (9th Cir. 1978) should not be applied to this case. Consequently, I respectfully dissent.

## I

Both 8 U.S.C. § 1254 and 8 U.S.C. § 1255 are remedial statutes which allow an otherwise deportable alien to seek relief from deportation. Specifically, both statutes provide that if an alien satisfies certain eligibility requirements, the Attorney General may, in his discretion, adjust the status of the alien to that of an alien "lawfully admitted for permanent residence." 8 U.S.C. §§ 1254(a), 1255(a). Although the eligibility requirements of the two statutes differ, both statutes require the Attorney General to exercise his discretion once eligibility for relief has been established.

Once an Order to Show Cause has issued, an alien can apply either for suspension of deportation under § 1254 or for adjustment of status under § 1255 during the course of his deportation proceedings. If the Attorney General denies the relief sought, we review his decision only for an abuse of discretion. When an alien has been found to be deportable but new circumstances thereafter arise [1] that either justify reconsideration of an earlier denial of relief or establish eligibility for relief not previously requested, the Attorney General may reopen the deportation proceedings to consider the effect of the new matter. *See* 8 C.F.R. §§ 3.2, 242.17, 242.22 (1979); *Urbano de Malaluan v. INS*, 577 F.2d at 592. Again, this court will review the denial of a motion to reopen only for an abuse of discretion. *Id.*

In *Malaluan*, we held that when an alien establishes a prima facie case of eligibility for suspension of deportation, it was an abuse of discretion not to reopen the alien's deportation proceedings. *Id.* at 593. This court reasoned that

*It was obviously the intent of Congress, in enacting § 244, that where eligibility*

*exists, the Attorney General or his designee should exercise discretion as to whether deportation should be suspended. . . . If a prima facie case of eligibility does exist, it would be an abuse of discretion for the Board not to reopen the deportation proceeding to allow a hearing by the immigration judge to determine whether or not eligibility does, in fact, exist; and, if it does, to permit the immigration judge to exercise the discretion provided for in the statute.*

*Id.* (emphasis added).

This language in *Malaluan* is clear. If an alien establishes his eligibility for suspension of deportation, Congress intended that the Attorney General exercise his discretion and pass on the merits of the application. It so happens in suspension-of-deportation cases that one of the eligibility factors, *i. e.* extreme hardship, involves a discretionary determination. Consequently, this court felt that all an alien need show to obtain a reopened hearing was a prima facie case of eligibility, because a fair determination of actual eligibility, as well as whether discretion should be favorably exercised, could not occur absent a full hearing before an immigration judge. Although *Malaluan* centered therefore on whether the petitioner had established a prima facie case of eligibility, it cannot be read as a discussion of eligibility alone. Rather, *Malaluan* establishes the general proposition that if an alien shows through new evidence his eligibility for relief under § 1254, the Attorney General must reopen the deportation proceedings and exercise his discretion whether to grant the relief.

I find the reasoning of *Malaluan* directly applicable to adjustment-of-status cases. If, as *Malaluan* teaches us, Congress intended that the Attorney General exercise his discretion when an alien establishes eligibility for suspension of deportation, I can see no reason that Congress would not have intended the same result when an alien

---

1. The motion to reopen must be based on new facts not previously discoverable. 8 C.F.R. § 3.2 (1979); *Wosough-Kia v. INS*, 597 F.2d 1311 (9th Cir. 1979).

establishes his eligibility for adjustment of status. Thus, I would hold that if an alien establishes through new evidence that he is eligible for adjustment of status, his deportation proceedings should be reopened to allow the Attorney General to pass on the merits of the application as provided in § 1255.[2]

Applying the reasoning of *Malaluan* to adjustment-of-status cases would produce three distinct advantages. First, this court's treatment of analogous remedial statutes would be consistent and uniform. The majority approach seemingly will require this court to enunciate a new rule of law for each form of relief that could possibly be the subject of a motion to reopen.[3] Second, an alien who demonstrates eligibility for adjustment would have at least one opportunity to have the merits of his application passed upon by the Attorney General at a hearing. This, I believe, most clearly reflects the congressional intent behind the passage of § 1254 and § 1255. Third, this court would be able to review a denial of relief not on the basis of allegations contained in papers requesting a reopened hearing, but on the basis of the transcript of a hearing in which testimony and other evidence were fully considered.

The majority here concludes that the reasoning of *Malaluan* should not be applied to adjustment-of-status cases. The grounds upon which this conclusion is based merit discussion.

The majority suggests that *Malaluan* does not apply because one of the eligibility factors in suspension cases is discretionary, whereas the eligibility factors in adjustment cases are not. Thus, the majority reasons, a reopened hearing is probably required to determine *actual* eligibility in suspension cases, but is unnecessary in adjustment cases.

I find this analysis faulty for two reasons.

First, it is simply not true, as the majority suggests, that the eligibility determination in adjustment cases is "essentially ministerial." An alien seeking adjustment of status must show, *inter alia*, that he is "admissible to the United States." 8 U.S.C. § 1255(a). An alien is not admissible if he falls within any of the 33 grounds for exclusion enumerated in 8 U.S.C. § 1182(a). There are numerous grounds of inadmissibility that frequently generate factual or discretionary issues. For example, an alien is inadmissible if, at the time of his application for admission, "in the opinion of the Attorney General" the alien is "likely at any time to become [a] public charg[e]." 8 U.S.C. § 1182(a)(15). Obviously, this is not a ministerial determination. *See also* 8 U.S.C. §§ 1182(a)(2) (aliens who are "insane"); 1182(a)(4) (aliens with "psychopathic personality" or "sexual deviation"); 1182(a)(8) (aliens who are "paupers, professional beggars, or vagrants"); 1182(a)(27) (aliens "who the consular officer or the Attorney General knows or has reason to believe seek to enter the United States . . to engage in activities which would be prejudicial to the public interest, or endanger the welfare, safety, or security of the United States"). Indeed, the very case cited by the majority in support of its claim that eligibility determinations in adjustment cases are "ministerial" involved a dispute over whether an alien had been convicted of a crime in a foreign country, and was thus excludable under 8 U.S.C. § 1182(a)(9). *Marino v. INS*, 537 F.2d 686 (2d Cir. 1976).

It is true that disputes over admissibility will not always arise in adjustment cases. When they do, however, the resulting eligibility determinations can hardly be called "essentially ministerial." They are sometimes factual, and sometimes discretionary,

---

**2.** It bears emphasis that because a reopened hearing must be based on *new* evidence going to eligibility, there appears to be little threat of such a holding "opening the floodgates" to dilatory tactics by aliens seeking to remain in this country.

**3.** *See, e. g.*, 8 U.S.C. §§ 1251(f) (relief from deportability for entry by fraud); 1253(h) (political persecution); 1254(e) (voluntary departure).

but in either case they are the type of question that can be resolved only after a consideration of evidence. When the evidence that the alien seeks to introduce includes testimony, as is often the case, the eligibility determination cannot be made intelligently without an evidentiary hearing. Thus I cannot agree with the majority's opinion that as a rule, "eligibility for adjustment of status does not involve a discretionary determination." To refuse to apply *Malaluan* to this case on the ground that there is a substantive difference between the eligibility determination involved in adjustment and suspension cases is unwarranted.

Second, the majority improperly relegates the reasoning of *Malaluan* to a mere discussion of eligibility. *Malaluan* did not hold that a reopened hearing was for the sole purpose of determining eligibility; it held that if, on the basis of new evidence, the alien shows a prima facie case of eligibility, the Attorney General should reopen to determine both actual eligibility *and* whether discretion should be granted. Thus, even if the majority were correct in describing the eligibility determination in adjustment cases as "ministerial," such a conclusion would be irrelevant. It is reasonable to assume that if the Service had conceded in *Malaluan* that the petitioner had, through new evidence, established eligibility for relief, this court would have held it to be an abuse of discretion not to reopen the proceedings to determine whether discretionary relief should be favorably exercised. Yet, the majority ignores this aspect of *Malaluan* and holds that if a hearing on eligibility is unnecessary, a hearing whether discretionary relief should be granted is similarly unnecessary and the merits of the application can be passed upon on the basis of moving papers alone.

I find this approach untenable, particularly because such an interpretation would produce an anomalous result. The alien whose eligibility hinges on disputed facts would presumably receive a hearing. As in *Malaluan*, that hearing would address not only the eligibility issue, but also, if the alien is found to be eligible, the question whether relief should be granted. In contrast, the alien who clearly shows eligibility would be denied a hearing on the issue whether discretion should be favorably exercised on the tenuous theory that a hearing would serve no purpose. The majority approach therefore penalizes an alien for making too strong a showing of eligibility. In addition, under the majority view, there is nothing to prevent the Service from defeating the alien's right to a hearing through the simple expedient of stipulating to eligibility.

## II

The second major contention of the majority, and indeed what appears to be the deciding factor here, is that Obitz has not presented "new evidence that bears on whether the Attorney General should exercise his discretion . . . ." I again take issue with this conclusion for two reasons.

First, an alien who establishes eligibility for relief through new evidence has inherently presented evidence that justifies a reopened hearing wherein the Attorney General can exercise his discretion on the merits of the application. Here, for example, Obitz married a United States citizen. The Service granted the visa petition filed on her behalf by her husband; indeed, this is the new fact upon which her application is based. Insofar as it appears that Obtiz has established to the Service's satisfaction that she has a bona fide marriage (presumably after investigation, *see* 8 U.S.C. § 1154(b)), and insofar as this is a new fact not explicitly passed upon by the Service in a prior deportation hearing, there is no ground for the implicit assertion that there is no new evidence that justifies a reopened hearing.[4] Stated differently, a bona fide

---

**4.** If the majority view were accepted, I am unsure what would be required of an alien who,

after being found deportable, marries a United States citizen. Clearly, the remedial provisions

marriage to a United States citizen automatically creates an equity relevant to whether discretion should be favorably exercised. Thus, I find the general proposition relied upon by the majority (*i. e.*, that an alien need show more than mere eligibility) to be an ill-conceived ground upon which to deny a reopened hearing.

The second reason why I find the majority's position unacceptable is that the majority seemingly places a great deal of emphasis upon the fact that in an earlier motion to reopen for extended voluntary departure, this court, in rejecting Obitz's petition for review, suggested that Obitz's marriage "contracted long after she knew she was under an order of deportation, does not create substantial equities in her favor." Because Obitz relies again in this motion to reopen on the equities created by her marriage, the majority would apparently give full res judicata effect to this statement and deny her relief now.

I cannot accept this position. First, regardless of her marital status, Obitz as a matter of law was not entitled to a stay of deportation (and, presumptively, a reopened hearing) on the basis of a then-pending visa application. *Armstrong v. INS*, 445 F.2d 1395 (9th Cir. 1971). Consequently, I think it reasonable to conclude that this court's prior reference to the equities of her marriage is dictum, because it was not necessary to the result reached. Second, it had not been established at that point that Obitz's marriage, "contracted long after she knew she was under an order of deportation," [5] was bona fide. The Service's grant-

ing of her husband's petition reflects a decision by the Service that the marriage is not a sham; consequently, this court's prior language seems all the more subject to question.

Finally, the record here is silent whether Obitz has *ever* had a hearing on the equities created by her marriage to a United States citizen. To deport her on the basis of a record developed on moving papers alone and an unclear and possibly unwarranted statement in this court's prior decision would establish an unfortunate precedent.

Admittedly, Obitz's case is not the most sympathetic. Nonetheless, she has now established to the satisfaction of the Service her eligibility for a form of relief that Congress has provided to otherwise-deportable aliens. The Attorney General, and not this court, should examine the merits of her application at a reopened hearing and determine whether discretion should be granted as provided for in § 1255. To deny this application, and thus deny to other aliens with possibly more sympathetic cases the procedural protections we established in *Malaluan*, would, I am afraid, give great meaning to the phrase that hard cases make bad law. Consequently, I would require the Board of Immigration Appeals to reopen Obitz's proceedings and to exercise its discretion to determine whether Obitz merits adjustment of status.

---

of § 1255 would apply and allow such an alien to seek adjustment of status through a reopened hearing. But the majority would seemingly place the burden on the alien of not only showing that a bona fide marriage exists (*i. e.*, eligibility), but of showing through some form of additional evidence that the marriage creates equities going to the issue whether discretion should be granted. I cannot envision what form this evidence might take, nor do I find any suggestion in § 1255 that it was Congress's intent that, in order to have the Attorney General exercise discretion to grant or deny relief, the alien need show anything more than that a legitimate marriage to a United States citizen exists.

5. Possibly, this court felt that Obitz's marriage did not create a "substantial equity" because it occurred after she was ordered deported. However, all motions to reopen must be based on new evidence *not* available at an alien's prior deportation proceeding. *Wosough-Kia*, 597 F.2d at 1312. Ipso facto, all new evidence that accompanies motions to reopen must arise after an alien becomes aware that he is to be deported. I see no reason why the Service allows aliens to request reopened hearings if the evidence upon which the motions must be based is to be largely disregarded.