Garcia MESA, et al., Petitioners,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 83–1574.

United States Court of Appeals,
First Circuit.

Argued Jan. 3, 1984.

Decided Feb. 7, 1984.

James G. Espinosa, Framingham, Mass., with whom Joseph F. O'Neil and Law Offices of Joseph F. O'Neil, P.C., Boston, Mass., were on brief, for petitioners.

James A. Hunolt, Atty., Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen. and Allen W. Hausman, Atty., Civ. Div., Dept. of Justice, Washington, D.C., were on brief, for respondent.

Before COFFIN, ALDRICH and BREYER, Circuit Judges.[1]

BAILEY ALDRICH, Senior Circuit Judge.

Petitioner Garcia Mesa, a native and citizen of Colombia, entered the United States on a two weeks visitor's visa in July, 1974. Ultimately deportation proceedings were commenced, and petitioner conceded deportability. He was granted the privilege of voluntary departure, but failed to depart. Passing over various other matters, petitioner later filed a motion to reopen and suspend deportation, 8 C.F.R. § 3.2; 8 U.S.C. § 1254(a)(1),[1] alleging "extreme hardship," primarily because in Colombia he

---

1. § 1254. *Suspension of deportation—adjustment of status for permanent residence; contents.*

(a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been phys-

ically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person who deportation would, in the opinion of the Attorney General, *result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States* or an alien lawfully admitted for permanent residence; ...."
(Emphasis suppl.)

would be subject to political persecution. This was denied by the Board of Immigration Appeals. In July, 1983, petitioner filed a second motion to reopen and suspend deportation, this time concentrating on hardship because of his wife's health. She, unlawfully in this country since coming here in 1978, is deportable, has not been here the requisite seven years under section 1254(a)(1), and is not herself a petitioner. The children, likewise, do not qualify for relief. The Board correctly noted, "Any hardship on them is therefore relevant only insofar as it intensifies the hardship to [petitioner.]" Much argument in petitioner's brief that his deportation would effect a family separation is misplaced. His motion was denied without a hearing, and petitioner seeks review.

The basis of the second motion to reopen was a letter from a psychologist who had interviewed petitioner and his wife and who had found that petitioner "evidences no signs of major mental illness," but who had formed the opinion that Mrs. Mesa's being forced to return to Colombia had the "potential" for serious consequences for her mental and emotional health, and might result in similar problems for the children, and that "the clinical literature does suggest that the Mesas are prime candidates for adverse reaction." In a memorandum extensively reviewing the claims, the Board concluded that petitioner "has failed to set forth additional or new facts, which individually or in the aggregate establish *prima facie* eligibility for relief under section 244(a)(1) of the Act. See *INS v. Wang* [450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981)]...." It denied the motion. We affirm.

Petitioner's principal contention here is that the letter established a prima facie case of extreme hardship; that he therefore was entitled to a hearing, and that the

Board committed error by judging the allegations without one. The INS responds that none of the asserted evidence was newly discovered, as it was required to be, 8 C.F.R. § 3.2,[2] and that, in any event, the Board was warranted in denying the motion without a hearing.

■ With respect to section 3.2, even the psychologist acknowledged that Mrs. Mesa had been under treatment for twenty years. Petitioner states that he did not present the medical testimony before because he had a "firm conviction that favorable action would be taken on their [first] appeal." Rather than an answer, this is a confession of violation. In addition, petitioner, for the first time, asserts that the loss of the first reopening "precipitated" his wife's condition. Passing the fact that this claim goes beyond the doctor's letter and was not argued to the Board, petitioner has seemingly invented perpetual motion, or, more exactly, perpetual immobility. If he wins the case, well and good. If he loses, the pain of losing furnishes a hardship ground for winning the next time. There would be no end to this procedure.

■ Even if petitioner cleared the "new facts" hurdle, however, we find no error in the Board's denial. The pertinent regulation, 8 C.F.R. § 3.8,[3] requires for reopening a recitation of "particular facts" which the Court in *Wang* construed to mean "reliably indicating the specific recent events that would render deportation a matter of extreme hardship." 450 U.S., ante, at 143, 101 S.Ct. at 1030. In footnote 5, pp. 143–144, 101 S.Ct. pp. 1030–1031, the Court said, "... The present regulation is framed negatively; it directs the Board not to reopen unless certain showings are made. It does not affirmatively require the Board to reopen the proceedings under any particular condition. Thus, the regu-

---

2. § 3.2 *Reopening or reconsideration.*
"... Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing...."

3. Section 3.8 is an extension of section 3.2, setting forth in detail the mechanics and procedure for handling section 3.2 motions. We note, in particular, that the section expressly leaves determination of whether to hold a hearing to the Board's discretion.

lations may be construed to provide the Board with discretion in determining under what circumstances proceedings should be reopened. See *Villena v. INS*, 622 F.2d 1352 (CA9 1980) (en banc) (Wallace, J., dissenting). In his dissent, *Judge Wallace stated that INS had discretion beyond requiring proof of a prima facie case:*

> 'If INS discretion is to mean anything, it must be that the INS has some latitude in deciding when to reopen a case. The INS should have the right to be restrictive. Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case. It will also waste the time and efforts of immigration judges called upon to preside at hearings automatically required by the prima facie allegations.' Id., at 1362." (Emphasis suppl.)

More recently, in *INS v. Phinpathya*, —— U.S. ——, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984) the Court referred to *Wang* as "reject[ing] a relaxed standard for evaluating the 'extreme hardship' as impermissibly shifting discretionary authority from INS to the courts," —— U.S. ante at ——, 104 S.Ct. at 592, and, further, in footnote 6 stated,

> " . . . . Although respondent has filed a motion with BIA asking that her deportation proceeding be reopened, granting of the motion is entirely within BIA's discretion. See 8 C.F.R. § 3.2 (1983); *INS v. Wang*, 450 U.S. 139, 143–144, 144, and n. 5 [101 S.Ct. 1027, 1030–1031, 1031, and n. 5, 67 L.Ed.2d 123] (1981)."

We read this to mean that the court must accept the Board's decision to reject even a prima facie case without a hearing unless we find its action to be arbitrary, capricious, or an abuse of power.

Petition denied.