**Mohammad Ebrahim RIASATI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 83–1255.**

United States Court of Appeals, Tenth Circuit.

July 16, 1984.

U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *White v. Schweiker,* 725 F.2d 91, 93 (10th Cir. 1984).

David M. Doering, Denver, Colo., for petitioner.

Richard K. Willard, Acting Asst. Atty. Gen., Thomas W. Hussey and Donald A. Couvillon, Attys., Office of Immigration Litigation, Civil Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Mohammad Ebrahim Riasati, a citizen of Iran who entered the United States on a student visa in December 1976, petitions under 8 U.S.C. § 1105a(a) for review of final orders of the Board of Immigration Appeals denying his motions to reopen deportation proceedings. Petitioner claims

that the Board abused its discretion in refusing to reopen his case because it failed to adequately consider the factors relevant to his motions.

In January 1978, the Immigration and Naturalization Service (INS) charged petitioner with violating the conditions of his non-immigrant (student) status by taking employment without authorization, a deportable offense. 8 U.S.C. § 1251(a)(9). His 1978 deportation hearing was adjourned to permit the District Director to consider petitioner's request for reinstatement to student non-immigrant status. After a two-year delay, during which the Director denied reinstatement, the hearing was reconvened in April 1980. At that hearing petitioner admitted the essential allegations. The immigration judge granted petitioner's request that he be allowed to depart voluntarily and gave him until June 19, 1980, which would enable him to complete the school semester. Petitioner elected France as his country of deportation. The immigration judge directed that petitioner be deported to Iran if France refused to accept him. Petitioner did not ask for an adjustment of status and stated that he did not seek asylum. Petitioner appealed the decision to the Board of Immigration Appeals, which dismissed the appeal as meritless but set a new voluntary departure date of April 28, 1981. The Board issued a contingent order for deportation if petitioner failed to leave within that time. Petitioner did not depart and on April 29, 1981, became a deportable alien.

On October 12, 1982, the INS issued a warrant of deportation to Iran and sent by certified mail to petitioner's last known address a notice to appear for deportation on October 18, 1982. Petitioner failed to appear on October 18 and was taken into custody later that day at his place of employment.

Shortly thereafter petitioner filed a motion to reopen the deportation proceedings asking to be allowed to apply for an adjustment of his status to lawful permanent resident.[1] He also asked for a stay of the deportation order or, alternatively, for another grant of voluntary departure and a change in the directed country of deportation from Iran to Spain. Petitioner based his motion primarily upon his recent marriage to an American citizen and the filing of an immigrant visa petition for him by his wife. Petitioner's motion also stated that as the husband of a United States citizen he faced possible persecution in Iran and that his deportation would cause extreme hardship and mental suffering to himself and his wife. The Board denied all of petitioner's requests. After noting that petitioner had not submitted the appropriate application for adjustment of status with his motion, the Board denied the motion based on "respondent's failure to depart voluntarily, to notify the Service of his current address, and to respond to the order to report for deportation, which adverse factors are not outweighed by his recent marriage." The Board also denied the motion to reopen to reinstate voluntary departure or to change the directed country of deportation because the petitioner "has failed to state compelling reasons for his failure to depart voluntarily or for changing his designation."

After petitioner appealed the Board's decision to this Court, he filed a second motion to reopen deportation proceedings with the Board. With this motion petitioner filed the appropriate application for adjustment of status as well as notice of approval of a visa petition filed by his wife. We granted a motion to stay review of the

---

1. To be eligible for an adjustment of status, an alien must satisfy the requirements of 8 U.S.C. § 1255(a). Section 1255(a) provides,

"The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."

appeal pending the outcome of the motion to reopen. Thereafter, the Board denied petitioner's second motion to reopen. Although petitioner had overcome his previous *prima facie* ineligibility by filing an adjustment of status application, the Board observed that petitioner did not "explain the reasons for his actions which the Board considered as adverse factors, i.e., why he failed to depart voluntarily when permitted and to notify the Service of his change of address." The opinion further stated,

"[A]lthough his new attorney states that the respondent never received the notice to report for deportation sent by the Service, the respondent has not offered any affidavit to that effect. Neither has he made any representation that his former counsel, who withdrew his appearance only after the respondent was to have reported for deportation, failed to inform him of the Service's notification. Our previous conclusion that the respondent does not merit reopening of the proceedings as a matter of discretion is therefore unchanged. Accordingly, the motion to reopen will be denied."

Supp. Vol. I, 2.

I

■■■ This Court must review the Board's denial of petitioner's motion to reopen under the abuse of discretion standard. *See Motamedi v. INS*, 713 F.2d 575 (10th Cir.1983). In *In re Reyes*, Interim Decision No. 2907 (BIA June 30, 1982), the Board held that it can deny a motion to reopen solely for discretionary reasons, especially when adverse factors are present in the case, and that substantial adverse factors (such as an order of deportation outstanding for years and unexecuted because of the alien's actions) must be overcome by a clear and unambiguous showing of eligibility for the benefit sought before a motion to reopen will be granted. In denying petitioner's first motion to reopen, the Board found that petitioner's marriage seventeen months after its final order of deportation and the grant of the privilege of voluntary departure did not outweigh the adverse factors.[2] These adverse factors were: (1) his unexplained failure to depart voluntarily, (2) his failure to respond to the order to report for deportation, and (3) his failure to notify the INS of his current address.

*Obitz v. District Director of the INS*, 623 F.2d 1331 (9th Cir.1980), a case that the Board cited in its denial of petitioner's motion, involved a petition to reopen deportation proceedings based on the alien's pending visa application and recent marriage to a United States citizen. In denying the motion the court stated, "A pending visa application does not entitle an alien to a stay of deportation, *Armstrong v. INS*, 445 F.2d 1395 (9th Cir.1971), and Obitz's marriage, contracted long after she knew she was under an order of deportation, does not create substantial equities in her favor." *Id.* at 1333 n. 2. We must agree with *Obitz* that petitioner's marriage does not necessarily entitle him to a reopening of his case. *See also Gonzalez-Cuevas v. INS*, 515 F.2d 1222, 1224 (5th Cir.1975) (an alien illegally present in the United States cannot gain favored status merely by the birth of his citizen child).

■■■ Petitioner contends that the Board failed to consider present conditions in Iran before determining that reopening the deportation proceeding would serve no purpose. In its orders the Board did not specifically discuss human rights violations in Iran. In *Motamedi v. INS*, 713 F.2d 575 (10th Cir.1983), we reversed the Board's refusal to grant the alien's motion to reopen deportation proceedings so that he might file for asylum or withholding of deportation. There the alien's motion stated that long after the deportation hearing

---

**2.** The Board considered the merits of petitioner's first motion to reopen even though the Board apparently believed that petitioner failed to establish a prima facie case under 8 U.S.C. § 1255 because of his failure to file an application for adjustment of status. Because the Board reached the merits of petitioner's first motion, we assume for purposes of this appeal that petitioner was eligible for a discretionary adjustment of status at the time his first motion to reopen was filed.

89

he learned from his father in Iran that a brother and cousin who just returned to Iran were persecuted for anti-Khomeini activities while outside that country. Motamedi, by affidavit, indicated that he had participated in anti-Khomeini demonstrations while in the United States and that he feared persecution if deported. As one of the grounds for refusing to reopen Motamedi's case, the Board stated that the new evidence was insufficient to justify the relief sought. We held that the Board abused its discretion in so holding. In contrast, in the case at bar petitioner, in both motions to reopen, merely states in conclusory fashion that because he is married to a United States citizen he "may be subject to the risk of personal harm and persecution" if deported to Iran.[3] He filed no affidavit citing any facts to justify those fears. He did not indicate that he wanted to file an application for withholding of deportation or for asylum. At his deportation hearing in April 1980 he was specifically asked the following:

"Mr. Riasati, in such an event [France's refusal to accept him] it becomes necessary to order your deportation to Iran you have the right to ask the Attorney General to withhold your deportation to Iran if you fear persecution because of race, religion, expression of political opinion or belonging to an ethnic minority group. Do you have any such fears?"

R. I, 68. Petitioner answered "no." In these circumstances we cannot say that the Board abused its discretion in when it failed to comment specifically upon petitioner's reference to possible persecution.

■ The Board denied petitioner's second motion to reopen because petitioner did not give any reasons for his failure both to depart voluntarily and to provide a current address and because petitioner gave an unconvincing explanation for failing to report for deportation. *See* 8 C.F.R. § 3.2 (motion to reopen "shall not be granted unless it appears to the Board that evidence sought

to be offered is material"). Petitioner alleged that he never received notice to report for deportation; however, petitioner never submitted an affidavit to that effect. More important, the INS sent notice to report for deportation by certified mail to his last known address and to his counsel. We hold that the Board did not abuse its discretion in denying both motions to reopen.

II

In addition to seeking reopening to apply for an adjustment of status, in his first motion to reopen petitioner asked for reinstatement of voluntary departure. The Board refused this request because of petitioner's failure to state compelling reasons for not complying with his earlier grant of voluntary departure.

■ Under 8 U.S.C. § 1254(e), the Attorney General may, in his discretion, allow an alien subjected to deportation proceedings to depart voluntarily from the United States. *See Ballenilla-Gonzalez v. INS*, 546 F.2d 515, 521 (2d Cir.1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 58, 54 L.Ed.2d 75 (1977). In *In re Onyedibia*, 15 I. & N. Dec. 37 (1974), the Board denied an alien's motion to reopen to seek a new grant of voluntary departure. The alien did not explain his failure to comply with the initial grant of voluntary departure. The Board noted that in order to warrant the grant of another privilege, the alien must show compelling reasons or circumstances that caused his failure to depart. Requiring any less showing would provide little motivation for the alien to depart promptly and would result in additional delay in the deportation process. *Id.* at 38; *see also Der-Rong Chour v. INS*, 578 F.2d 464, 468 (2d Cir.1978), *cert. denied*, 440 U.S. 980, 99 S.Ct. 1789, 60 L.Ed.2d 239 (1979). In the instant case, petitioner gave no reason whatsoever for his failure to depart voluntarily. Therefore, the Board did not abuse

**3.** Petitioner attempts to supplement the record with a lengthy report by Amnesty International about human rights violations in Iran. Since petitioner did not present this report to the

Board with either of the motions to reopen, it is not a part of the record on appeal and cannot be considered by this Court. *Neu v. Grant,* 548 F.2d 281, 286 (10th Cir.1977).

its discretion in refusing to reopen consideration of petitioner's request for voluntary departure.

### III

■ Finally, we consider whether the Board properly denied petitioner's request to redesignate the country for his deportation from Iran to Spain. An alien subject to deportation proceedings may designate a country for his deportation. 8 U.S.C. § 1253(a). If the alien designates a country not of his citizenship or nativity, the immigration judge, acting for the Attorney General, specifies a "directed" country of deportation in the event that the designated country refuses to accept the alien. 8 C.F.R. § 242.17(c). Although the INS may permit an alien to withdraw his designation in cases of hardship or possible persecution, and the courts will review the INS' refusal for an abuse of discretion, the alien does not have an absolute right to withdraw a designation when the INS opposes the withdrawal. *Wong Kam Cheung v. INS,* 408 F.2d 35, 38 (2d Cir.1969). We cannot find that the Board abused its discretion in denying the request.

AFFIRMED.