Karim Heydari **AHWAZI**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE**, Respondent.

David Marshall
**SAHABANDU**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE**, Respondent.

Nos. 84–7000, 84–7076.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1984.

Decided Jan. 16, 1985.

Ferguson, Circuit Judge, dissented and
filed an opinion.

Rudy Aguirre, Cardenas, Fifield &
Aguirre, Alhambra, Cal., for petitioners.

Dzintra I. Janavs, Asst. U.S. Atty., Los
Angeles, Cal., for respondent.

Before SNEED, ANDERSON, and FER-
GUSON, Circuit Judges.

SNEED, Circuit Judge:

Karim Heydari Ahwazi and David Marshall Sahabandu each petition for review of the Board of Immigration Appeals' (BIA) denial of their motions to reopen their respective deportation proceedings to apply for adjustment of status based on their marriages to United States citizens. We consolidated the petitions and deny both.

## I.

### FACTS AND PROCEEDINGS BELOW

#### A. *Ahwazi*

Petitioner Ahwazi, a native and citizen of Iran, was admitted to the United States as a nonimmigrant student on September 29, 1977. He was authorized to remain in this country until June 4, 1978, but he failed to leave within that time. Accordingly, deportation proceedings were brought against him. On September 4, 1980 an immigration judge found Ahwazi deportable as an overstay based on his own admissions, denied his application for a suspension of deportation, and granted him the privilege of voluntary departure on or before September 15, 1980. Ahwazi appealed that decision to the BIA. The BIA dismissed that appeal on August 19, 1981. This court denied Ahwazi's petition for review of the BIA's decision in an order dated October 21, 1982. Following this denial of his petition for review, Ahwazi failed to leave the United States pursuant to the immigration judge's order. Consequently, the INS ordered petitioner to report for deportation on September 1, 1983. Approximately one week before his deportation date, Ahwazi married a United States citizen, who immediately filed a visa petition on his behalf. At this same time, Ahwazi filed a motion to reopen his deportation proceeding in order to apply for adjustment of status and reinstatement of voluntary departure. The BIA denied the motion to reopen. Ahwazi then filed this petition for review.

#### B. *Sahabandu*

Sahabandu is a native and citizen of Sri Lanka who entered this country as a non-immigrant student on February 22, 1969. He was authorized to remain here until February 21, 1973. He failed to leave by this date. On March 8, 1974, a deportation hearing was held, at which Sahabandu was found deportable as an overstay on the basis of his admissions. Petitioner appealed this decision to the BIA, asking for an indefinite continuance so that he might effectuate a reconciliation with his spouse, a United States citizen, and thereafter apply for adjustment of status. The BIA dismissed his appeal on March 4, 1975, finding that more than enough time had elapsed for Sahabandu to reunite with his wife if they were so inclined. Subsequent to the BIA's dismissal, however, petitioner and his wife did reconcile. Accordingly, he filed a motion to reopen based on this reconciliation, and his wife simultaneously filed a visa petition on his behalf. In light of these circumstances, petitioner was granted a stay of deportation by the District Director of INS on June 10, 1975. Thereafter, the marriage apparently deteriorated. Finally, in February 1981, petitioner and his wife were divorced.

On July 22, 1981, Sahabandu filed a second motion to reopen, this time claiming that deportation to Sri Lanka would cause him extreme hardship. After extensive hearings, the BIA denied this motion to reopen because petitioner had failed to establish a prima facie case of extreme hardship. On June 24, 1983, this court affirmed the BIA's denial of petitioner's second motion to reopen. Consequently, Sahabandu was requested to report for deportation on August 18, 1983. He failed to report at the requested time. Instead, on September 19, 1983, petitioner remarried, again to a United States citizen. His new wife filed a visa petition on his behalf, and at the same time, petitioner filed a third motion to reopen to file for adjustment of status. While this motion was pending before the BIA, petitioner also filed a petition for a writ of habeas corpus in the United States District Court. On February 2, 1984, the BIA denied Sahabandu's third motion to reopen. On April 4, 1984, the district court

dismissed the habeas petition. Sahabandu now petitions for review of the BIA's denial of his third motion to reopen.

## II.

### DISCUSSION

On appeal, both petitioners argue that the BIA abused its discretion in denying their motions to reopen. Specifically, each claims that because he established his statutory eligibility for adjustment of status,[1] the BIA erred in not remanding his petition to an immigration judge for a hearing. The petitions raise a common issue, the resolution of which will dispose of both.

This court reviews denials of motions to reopen under the abuse of discretion standard. *Agustin v. INS*, 700 F.2d 564, 565 (9th Cir.1983) (per curiam); *Ro v. INS*, 670 F.2d 114, 116 (9th Cir.1982). The BIA's denial of a motion to reopen will be upheld unless it is arbitrary, irrational, or contrary to law. *Ramon-Sepulveda v. INS*, 743 F.2d 1307, 1309 (9th Cir.1984); *Batoon v. INS*, 707 F.2d 399, 401 (9th Cir.1983).

The scope of our review of the BIA's decisions in these cases is further circumscribed by the discretion conferred upon the Attorney General and his delegates—in this case, the BIA—to reopen deportation proceedings. 8 C.F.R. § 3.2 (1984) provides that:

> Motions to reopen ... shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted

... unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing.

As the Supreme Court observed in *INS v. Wang*, 450 U.S. 139, 144 n. 5, 101 S.Ct. 1027, 1031 n. 5, 67 L.Ed.2d 123 (1981) (per curiam), these regulations are framed in the negative, establishing when the BIA may *not* reopen, but saying nothing about when it *must* reopen. "Thus, the regulations may be construed to provide the Board with discretion in determining under what circumstances proceedings should be reopened." *Id.; see also INS v. Phinpathya*, —— U.S. ——, 104 S.Ct. 584, 589 n. 6, 78 L.Ed.2d 401 (1984) (whether to grant a motion to reopen is "entirely" within BIA's discretion). The Court in *Wang* further noted that this discretion *extends beyond* requiring proof of a prima facie case. 450 U.S. at 144 n. 5, 101 S.Ct. at 1031 n. 5. Quoting Judge Wallace's dissent in *Villena v. INS*, 622 F.2d 1352, 1362 (9th Cir.1980) (en banc), the Court explained that:

> If INS discretion is to mean anything, it must be that the INS has some latitude in deciding when to reopen a case. The INS should have the right to be restrictive. Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case. It will also waste the time and efforts of immigration judges called upon to preside at hearings automatically required by the prima facie allegations.

450 U.S. at 144 n. 5, 101 S.Ct. at 1031 n. 5. *Wang* thus firmly establishes that the BIA has discretion to deny a motion to reopen without a hearing, even if the alien makes out a prima facie case of eligibility for suspension of deportation.[2] *See Sida v.*

---

1. An alien requesting an adjustment of status must demonstrate: (1) that he has applied for an adjustment of status; (2) that he is eligible to receive an immigrant visa and is admissible to the United States; and (3) that an immigrant visa is immediately available to him at the time his application is filed. 8 U.S.C. § 1255 (1982). Once an alien has demonstrated statutory eligibility for adjustment of status, the Attorney General or his delegate then has discretion either to grant or deny the requested adjustment of status. *See Obitz v. INS*, 623 F.2d 1331, 1333 (9th Cir.1980) (en banc).

2. Where an alien presents a prima facie case of statutory eligibility for suspension of deportation that requires a discretionary determination, a hearing may be necessary. *Obitz v. INS*, 623

*INS,* 665 F.2d 851, 854 (9th Cir.1981); *Mesa v. INS,* 726 F.2d 39, 40–41 (1st Cir.1984).

■ Here, petitioners' motions to reopen were based solely on their recent marriages to United States citizens. The Service and the BIA conceded that, on the basis of these marriages, petitioners are statutorily eligible for adjustment of status. Petitioners, however, offered no further new evidence suggesting why the BIA should exercise its discretion to adjust their status. Accordingly, the BIA determined that a hearing in these cases would be superfluous. *See Obitz v. INS,* 623 F.2d 1331, 1333 (9th Cir.1980) (en banc) (a motion to reopen based on a request for adjustment of status typically does not require a hearing); *Riasati v. INS,* 738 F.2d 1115, 1118 (10th Cir.1984) (a request for adjustment of status does not automatically entitle petitioner to a hearing). It concluded that the equities of petitioners' recent marriages did not outweigh their violations of our immigration laws. As a result, the BIA refused to reopen their deportation proceedings, clearly stating its reasons for doing so. Under the facts of these cases, we cannot say that the BIA abused its discretion.

■ In petitioner Ahwazi's case, the BIA also refused his request for reinstatement of voluntary departure because he offered no explanation for his original failure to depart. In order to warrant a second grant of voluntary departure, an alien must show compelling reasons for his failure to depart initially. *Riasati,* 738 F.2d at 1119; *In Re Onyedibia,* 15 I. & N. Dec. 37 (1974). Ahwazi's failure to offer any explanation obviously does not meet this test. The BIA properly refused his request.

For the foregoing reasons, these petitions for review are denied.

DENIED.

F.2d 1331, 1333 (9th Cir.1980) (en banc). For example, a motion to reopen based on a prima facie case of extreme hardship, *see* 8 U.S.C. § 1254(a)(1) (1982), may require a hearing to determine whether the hardship is sufficiently extreme to warrant discretionary relief. *See Reyes v. INS,* 673 F.2d 1087 (9th Cir.1982); *Ur-*

FERGUSON, Circuit Judge, dissenting:

It has been universally understood that before an administrative body can exercise its considerable, almost unfettered, discretion over the lives of those placed before it, the agency has an initial obligation to address the equities that it is required to consider. The majority appears to adopt, for the first time, the proposition that the INS can make a determination of the equities in a particular case without bothering to consider the facts which define these equities. With all due respect for the concerns expressed by the majority, I dissent.

Both petitioners have made out a prima facie case for reopening the BIA's consideration of their petition to adjust their immigration status under 8 U.S.C. § 1255(a). The INS admits this. Both petitioners filed timely motions to reopen their deportation proceedings for the purpose of applying for discretionary relief from the Board of Immigration Appeals' (BIA) order of deportation. Both motions to reopen fell within the narrow definition set forth at 8 C.F.R. § 3.2, promulgated by the INS to identify those cases worthy of reopening. That is to say, both motions to the BIA were supported by undisputed affidavits containing evidence which was "material" and "could not have been discovered or presented at the former [deportation] hearing." 8 C.F.R. § 3.2.

Instead of deciding the narrow question that the petitioners placed before it—whether the new evidence was sufficient to justify a factual hearing to address the significance of these changed circumstances—the BIA assumed the task of weighing these changed circumstances to determine whether it would have eventually granted an adjustment of status to the petitioners. In so doing, the BIA did more than just short circuit the normal administrative pro-

*bano de Malaluan v. INS,* 577 F.2d 589 (9th Cir.1978). Similarly, where a motion to reopen is supported by a prima facie showing that the alien is likely to be politically persecuted if deported, a hearing might be necessary to determine whether relief is appropriate. *Samimi v. INS,* 714 F.2d 992 (9th Cir.1983).

cess that the petitioners had attempted to invoke. The BIA violated its own regulations. It exercised equitable discretion in a factual vacuum. In affirming the practice, the conclusion reached today ignores the fundamental concepts essential to the principled exercise of administrative discretion and transgresses a basic limitation on the principled exercise of judicial discretion—stare decisis.

## A. Abuse of Administrative Discretion.

In the BIA's haste to give expression to their a priori judgments on the legitimacy of the petitioners' marriages, the BIA violated its own regulations. It also chose a starkly unfair means of decision.

Just as it is an abuse of discretion for the BIA to ignore the statutory factors that Congress has devised to govern the BIA's substantive administrative task, *Contreras-Buenfil v. INS*, 712 F.2d 401, 403 (9th Cir.1983), it is an abuse of discretion for the BIA to disregard its own regulatory procedures regarding the method and criteria for considering motions to reopen deportation proceedings. The petitioners did not ask for final relief in their motions to reopen; instead, they asked for an opportunity to present more material evidence in order to seek a favorable reconsideration of their cases. Rather than decide the narrow question that the petitioners had, in accordance with the administrative process set forth in 8 C.F.R. § 3.2 and 3.8, placed before it, the Board embarked upon some sort of hybrid inquiry. This hybrid inquiry, combining a consideration of the necessary predicate for a successful motion to reopen with an inquiry into the petitioners' likelihood of success in obtaining final discretionary relief, is neither recognized nor authorized by the BIA's own regulations. *See* 8 C.F.R. § 3.2. Conversely, the petitioners' motion to reopen was an authorized and widely used procedure for initiating the reconsideration of the BIA's prior deportation decision. Thus, the BIA failed to comply with its own procedures, the only procedures that were then available to the petitioners, when it declined to answer the limited question of whether the petitioners'

affidavits contained a prima facie case for reopening, that is, the existence of material information that could not have been presented at the petitioners' former hearing.

The BIA's unauthorized consideration of the petitioner's likelihood of success in obtaining eventual relief was more than just an ultra vires procedural mechanism from the standpoint of the regulations governing motions to reopen deportation hearings. As the Supreme Court has noted, *INS v. Wang*, 450 U.S. 139, 143 n. 5, 101 S.Ct. 1027, 1030 n. 5, 67 L.Ed.2d 123 (1981), Section 3.2 is framed in the negative and mandates that "[m]otions to reopen in deportation proceedings *shall not* be granted unless it appears to the Board that evidence sought to be offered is material and was not" previously available. § 3.2. (emphasis added). In other words, the BIA is prohibited from reopening a case unless these two criteria are met. The only evidentiary basis for the BIA's reopening determination are the affidavits presented by petitioners under 8 C.F.R. § 3.2. The BIA is prohibited from reopening the deportation proceedings unless a prima facie case is contained in these affidavits. The BIA cannot, by itself, reweigh and reconsider the equities of a petitioner's case under the auspices of a motion to reopen.

The BIA's attempt to combine consideration of the ultimate merits of the petitioners' cases with consideration of their motions to reopen is not only beyond the permissible scope of a motion to reopen, it is patently unfair. This is self-evident in the "findings" of the BIA on the import of petitioner Ahwazi's marriage:

At the time when he was found deportable by the immigration judge, the respondent had not yet married his wife. The equity created by his marriage to a United States citizen was therefore developed well after the respondent knew he was required to leave the United States. Although the respondent's motion [to reopen] indicates that he met his wife in 1979 and had lived with her for a year and a half, there is no statement to ex-

plain why they waited for almost a year after the Court's decision to be married and were only married after the respondent was ordered to report for deportation. *Under these circumstances, we do not consider the equity created by the respondent's marriage to be of such significance to warrant reopening.*

Order denying motion to reopen, at 2 (emphasis added). Without an iota of familiarity with the four year relationship between petitioner Ahwazi and his wife, the BIA is able to conclude that the "equity created by the petitioner's marriage" is insubstantial. Absent any further factual foundation, the BIA's conclusions can represent only the exercise of administrative whim, not administrative discretion. If the BIA suspects that the petitioner's marriage is a sham, then it has ample administrative discretion to deny ultimate relief based on a reconsideration of the relevant equities. Decisions in the abstract, however, have nothing to do with equity or administrative discretion; rather, they are the quintessential example of an abuse of discretion.

B. The Law of This Circuit.

This circuit has already held that it is an abuse of discretion for the BIA to deny a motion to reopen where an alien has presented a prima facie case for relief. *Urbano de Malaluan v. INS*, 577 F.2d 589, 592–93 (9th Cir.1978); *Samimi v. INS*, 714 F.2d 992, 995 (9th Cir.1983); *Villena v. INS*, 622 F.2d 1352, 1359 (9th Cir.1980). I consider myself bound by this precedent and would accordingly reverse the BIA's decisions in these cases as an abuse of discretion. The only cases the majority cites do not contradict his precedent. For example, *Obitz v. District Director*, 623 F.2d 1331 (9th Cir.1980), is not only distinguishable from the facts of this case, it is consistent with the prior precedent which I find binding on this court. In *Obitz*, the petitioner's first motion to reopen involved an application for a stay of deportation or reinstatement of voluntary departure. 623 F.2d at 1332. The motion was based on her marriage to a United States citizen and a pending visa application. *Id.* The BIA denied the motion, and this court affirmed, holding, *inter alia*, that the BIA did not

abuse its discretion by denying reinstatement of voluntary departure, because it had considered Obitz's immigration history and the equities created by her marriage before denying her motion. 623 F.2d at 1333 n. 2.

Obitz's visa petition was subsequently approved, and Obitz made another motion to reopen to apply for adjustment of status for which she was therefore eligible. In reviewing the BIA's denial of the motion, this court found that Obitz had not presented evidence sufficient to change the previous consideration of the situation. *Id.* at 1333. Aside from the approval of the visa, which the court denominated "an essentially ministerial act," it found that the facts remained substantially as they were when it had previously reviewed the BIA's refusal to reopen Obitz's deportation hearing. *Id.* Under these circumstances, the court found that if the BIA had not abused its discretion in denying Obitz's first motion to reopen, its refusal to do so in the second proceeding was also no abuse. *Id.* In essence, Obitz received a consideration of her equities in the context of her first reopening petition, albeit with respect to voluntary departure rather than adjustment of status.

Reinstatement of voluntary departure is entirely discretionary. If the alien can show compelling reasons or circumstances that caused his or her failure to depart, voluntary departure may be reinstated at the discretion of the BIA. *Matter of Onyedibia*, 15 I & N Serv. 37 (BIA 1974). *See also Riasati v. INS*, 738 F.2d 1115, 1119 (10th Cir.1984).

Because there are no statutory prerequisites for the relief requested by Obitz, the BIA and the court looked at her immigration history and the equities created by her marriage. Both considered all the factors presented and denied Obitz relief. Therefore, when Obitz made her second motion to reopen to apply for adjustment of status, the BIA and the court had already considered all the evidence she offered. The only new evidence was the approval of her visa petition, which the court discounted as "an essentially ministerial act of the Service." *Obitz*, 623 F.2d at 1333. The *Obitz*

court stated that the BIA need not hold a hearing, even when a prima facie case is presented, if the alien presents no "new evidence that bears on whether the Attorney General should exercise his discretion to adjust her status [once] her statutory eligibility has been established." *Id.* at 1333.

If the alien makes a subsequent motion to reopen for adjustment of status based on new evidence that consists of nothing more than a ministerial act of the INS, the BIA need not grant the motion even though the alien has made a prima facie showing of statutory eligibility. In both of the cases before this court, however, the BIA has not previously considered the evidence that forms the basis of the reopening petition. In virtually every case previously decided by this court in which the alien presented a prima facie case for relief the new evidence had to be considered by the BIA before it could grant or deny discretionary relief. The same rule should apply here.

The BIA's own regulations, the law of this circuit, and equity itself demand that the BIA cannot determine the merits of a prima facie case without some elementary familiarity with the facts in a given case. Without such a foundation, administrative discretion becomes administrative abuse.