## KAVADIAS v. CROSS.

Civ. No. 904.

United States District Court
N. D. Indiana, Hammond Division.

Nov. 3, 1948.

Edmond Leeney, of Hammond, Ind., for petitioner.

Alexander M. Campbell, U. S. Atty. Northern Dist. of Indiana, of Fort Wayne, Ind., for respondent.

SWYGERT, District Judge.

The petitioner is an alien, born in Greece on October 23, 1914, and always a citizen of that country. He arrived at Montreal, Canada, in 1940 as a seaman. There he deserted his ship and was smuggled into the United States at some point on the Canadian border. His entry into the United States was illegal, in that he did not have an immigration visa entitling him to enter this country.

On July 12, 1941, a deportation proceeding was commenced against the petitioner by the issuance of a warrant for his arrest, the warrant having been signed by an authorized representative of the Immigration and Naturalization Service. On August 30, 1941, a hearing was had before an Immigration Service Inspector. On July 3, 1942, the Board of Immigration Appeals adopted the findings and recommendations of the Inspector and ordered the petitioner be deported to Canada. Canada refused to accept him, and because of the war conditions in Greece, the deportation order was held in abeyance.

On November 5, 1942, the Board of Immigration Appeals amended the order by providing that the petitioner be deported to Wales. Throughout the proceeding the petitioner was not in actual custody of the Immigration authorities, since he had been released upon his own recognizance.

The petitioner was inducted into the military service of the United States on March 5, 1943. He was honorably discharged from the Army on June 25, 1943, "for convenience of the Government to join the Armed forces of Greece." He was supposed to join the Greek Navy in New York. However, he failed to do so and now states that the reason he did not was because Greek sailors told him that Greeks were fighting each other in Egypt and he did not wish to fight his own countrymen.

A further hearing was conducted in petitioner's deportation proceeding on July 19, 1945. The Immigration Service Inspector thereafter recommended that the petitioner be deported to Greece. This recommendation was acted upon by the Board of Immigration Appeals on October 17, 1945, and, at the petitioner's request, it was ordered that he be permitted to depart voluntarily from the United States at his own expense. This order provided also that the warrant of deportation be withdrawn. The petitioner failed to depart from the country voluntarily, but he did leave the Pittsburgh area where he had been living. On November 5, 1946, the Board of Immigration Appeals reinstated the warrant of deportation. The new warrant was issued on December 3, 1946. The Immigration Service officials lost track of the petitioner from the time he left Pittsburgh until October 13, 1947, when he was apprehended. He was taken to the Hammond, Indiana, office of the Immigration and Naturalization Service and revealed that he had been married a few days before to a citizen of the United States. A further investigation was conducted by an Immigration Service Inspector and thereafter the petitioner filed a motion with the Board of Immigration Appeals to "reopen and to reconsider" the deportation order so as to permit him to show that his deportation would result in "serious economic detriment to his wife." In ruling on this motion, the Board of Immigration Appeals restated the pertinent facts and then said: "This record makes it clear that respondent

has not cooperated with the immigration authorities. His conduct indicates that he deliberately absconded in 1945 in order to prevent his deportation to Greece. He revealed his whereabouts only when he married an American citizen and thought that he could obtain discretionary relief. We do not think that his is a deserving case. We shall deny his motion."

Subsequently, the petitioner asked the Board of Immigration Appeals to reconsider this decision, but his request was denied. On March 24, 1948, the petitioner was taken into custody by the Immigration Service officials pending his removal to Greece. On the same day, this habeas corpus proceeding was instituted. An order was entered for the respondent to show cause why a writ should not issue. When the show cause order came on for hearing, evidence was submitted by both the petitioner and the respondent. The foregoing statement of facts is a resumé of that evidence. During the pendency of this proceeding, the petitioner was released from the custody of the Immigration officials after he had posted a $2,000 bond. The petitioner on June 12, 1948, filed an application with the Naturalization Service for leave to petition for naturalization.

The petitioner grounds his claim to the issuance of a writ of habeas corpus and a discharge from the custody of the respondent upon two propositions.

First, he contends that after his marriage on October 2, 1947, he became entitled to request suspension of his deportation under the provisions of Title 8 U.S.CA. § 155(c). He alleges that, although the decision to suspend the deportation is within the discretion of the Attorney General or his delegated representative, such discretion must not be exercised arbitrarily. It is his position that a refusal of the Board of Immigration Appeals to afford him a hearing on the issue of the economic detriment which may result to his wife from his deportation is arbitrary and contrary to the law.

Secondly, petitioner says that he is an honorably discharged veteran of World War II and eligible for citizenship under Public Law 567, 80th Congress, 2d Session, dated June 1, 1948, 8 U.S.C.A. § 724a. It is his contention that his deportation now would be inconsistent with the express wishes of Congress to qualify such alien veterans for naturalization.

As to the petitioner's first contention, it should be pointed out that the administrative regulations governing deportation proceedings provide that during the deportation hearing the Immigration Service Inspector shall advise the alien of his right to apply for suspension of deportation under Section 155(c). Title 8, Code of Federal Regulation, § 150.6 If such application is made, the inspector is required to take evidence on this question and then, after stating his conclusions of law, to submit a proposed order in regard to suspension of the deportation "in accordance with the judgment he has made on the basis of the evidence adduced at the hearing." This power of the Attorney General or his delegate, the Immigration and Naturalization Service, to suspend a deportation order is discretionary. See United States ex rel. Salvetti v. Reimer, 2 Cir., 1939, 103 F.2d 777; Ex parte Panagopoulos, D.C.S.D.Cal.1933, 3 F.Supp. 222. But it cannot be exercised in an arbitrary or capricious manner. United States ex rel. Weddeke v. Watkins, 2 Cir., 1948, 166 F.2d 369. In the Watkins case the court said on this exact point 166 F.2d at page 371: "Since the regulations of the Attorney General have set up a quasi-judicial procedure for the determination of issues bearing on the propriety of exercising his power to suspend deportation under 8 U.S.C.A. § 155(c), we assume that the alien is entitled to procedural due process in the conduct of such hearing, and we assume further that, if the Immigration Service issues a warrant of deportation without according the alien such procedural due process, the warrant can be challenged on this ground in habeas corpus proceedings."

In the instant proceeding, no hearing was conducted in connection with the petitioner's request that his deportation be suspended under the provisions of § 155(c). It therefore becomes necessary to determine whether the petitioner, under the pe-

culiar circumstances of this case, had a right to the use of the administrative procedure provided by the regulations and whether the Board abused its discretion by denying the petitioner's motion for reconsideration of his deportation order without first giving the petitioner a right to substantiate at a hearing the matters contained in his motion.

In considering these questions, emphasis must be placed upon the fact that a deportation hearing had been afforded the petitioner before he applied for a suspension under § 155(c). Of course, he was not in a position in 1941, when the hearing was conducted, to apply for such a suspension. And as a result of that hearing, a deportation order was issued and was unexecuted and outstanding against him for more than five years before the petitioner created the situation which qualified him to make an application for a suspension of the order. In other words, his deportation status had already been fixed in accordance with existing administrative procedure long before he became entitled to make an application for a suspension. It would thus appear that the regulations governing the procedure to be followed by the Immigration Service Inspector in deportation proceedings, as regards suspensions under § 155(c), could not and need not have been observed in this case. Indeed, the petitioner himself recognized this by the filing of his motion with the Board of Immigration Appeals to "reopen and reconsider" his deportation order.

■ But regardless of this, it would seem that the Board of Immigration Appeals would necessarily have to consider this motion and exercise the discretion allowed in suspension applications "honestly and in good faith and not arbitrarily or capriciously." United States ex rel. Weddeke v. Watkins, supra. And this is so despite the fact that at the time of his marriage the petitioner was and had been for many years fully aware of the deportation order. The statute fixes no time limit within which the Attorney General or his delegate must invoke his discretionary power to suspend the deportation of an alien. And if, as has already been indicated, an alien has the right to have his application for suspension considered and determined on an equitable basis, this right abides with the alien throughout the deportation process.

■ Despite the forceful arguments of the petitioner that the Board of Immigration Appeals acted arbitrarily, the Court cannot come to that conclusion. In the first place, Section 155(c) requires that the alien prove to the satisfaction of the Attorney General or his delegate that he has been of good moral character for the preceding five years. This is an additional requirement prerequisite to that of showing a "serious economic detriment" to some member of the alien's family. Although the Board did not in terms conclude that the petitioner had not proved himself of good moral character during the preceding five years, that is the plain implication of its decision. That such conclusion was justified by the facts seems obvious. The petitioner's actions and attitude in regard to this deportation proceeding, including his failure to live up to his expressed or implied promises to join the Greek Navy and to leave the country voluntarily upon the withdrawal of the deportation warrant form a sufficient basis for the Board to find that he has not proved himself to be of good moral character within the last five years.

■ Furthermore, the motion to reconsider the deportation order gives certain pertinent facts about the petitioner's marriage and then concludes with the claim that his deportation would cause serious economic detriment to his wife. In the absence of a present necessity for a hearing before an inspector as to a suspension of the order, it cannot be said that the Board did not consider advisedly and in a non-arbitrary manner the petitioner's motion as it sought to raise the issue of the possible economic detriment to the petitioner's wife. The Board had before it the fact that he had married only recently and at a time when he was under an order of deportation. A reading of its decision indicates that it considered this fact as it relates to the background of petitioner's unwillingness and refusal to comply with

the instructions of either civil or military authority. It seems reasonable to conclude that these matters could furnish a proper basis for the exercise of the discretion reposed in the Attorney General under the statute.

With regard to petitioner's second contention, the respondent correctly points out in his brief that the final authority in deportation matters rests with the Attorney General and that this authority is not taken away by the operation of any other statute, unless that statute specifically provides for exceptions to the power vested in the Attorney General. Public Law 567 provides no specific exceptions to the authority of the Attorney General under § 155. And there is no basis for a finding that there is an implied exception. Even assuming that an inconsistency results from a situation where the two statutes apply coincidentally to the same individual, there is nothing to indicate that Public Law 567 was intended to modify the provisions of Section 155. Naturalization is a matter of grace or privilege and is not a natural right, United States v. Schwimmer, 1929, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889. And while one may be eligible to apply for that privilege under the provisions of one statute, he may yet be deportable under another statute. Being eligible to apply for naturalization is not tantamount to being qualified to become a citizen, nor does it defeat the force of an independent statute providing for the deportation of aliens who have entered this country illegally. The only question before this Court is whether the petitioner is properly in custody, which depends upon whether the deportation order is valid. Whether the petitioner may be eligible to apply for citizenship is entirely beside the point.

For the foregoing reasons, the application for a writ of habeas corpus is denied. The evidence submitted on the show-cause order is viewed in the same light as if it had been submitted after the issuance of the writ. This opinion shall serve as special findings of fact and conclusions of law. Counsel for the respondent shall submit a draft of final order to opposing counsel within ten days and to the Court within fifteen days.