## UNITED STATES ex rel. GIACALONE v. MILLER, Commissioner of Immigration and Naturalization et al.

United States District Court
S. D. New York.

Oct. 14, 1949.

Peter C. Giambalvo, Brooklyn, for relator.

John F. X. McGohey, New York City, for respondent

RIFKIND, District Judge.

The relator, an alien detained under a warrant of deportation, challenges the fairness of the hearing accorded to him by the presiding inspector of the Immigration Service. He does not contend that he is

entitled to remain in the United States. He admits that he entered the United States illegally, deserting the ship on which he served as a seaman when it arrived in the United States in 1946. His complaint is that had the hearing been fair he would have been allowed to take advantage of the law which provides for voluntary departure. 8 U.S.C.A. § 155(c). The Attorney General's discretion in favor of permitting voluntary departure may be exercised in the cases defined by the statute if the alien "has proved good moral character for the preceding five years".

In the instant case the presiding inspector proposed a finding that the alien failed to establish that he had been a person of good moral character during the preceding five years and recommended that voluntary departure be denied. The inspector's decision was confirmed and the Board of Immigration Appeals dismissed the relator's appeal.

■ There is nothing in the record that conclusively establishes that the petitioner was not a person of good moral character for the five years preceding the hearing. The only flaw in his history was his confessed desertion from the ship on which he served as a seaman.[1] The fact of desertion does not necessarily preclude him from establishing his good moral character. No law of the United States makes such desertion a criminal offense. See 8 U.S.C.A. § 171; 22 U.S.C.A. § 258. The only penalty for desertion is loss of wages and effects. 46 U.S.C.A. § 701.

Furthermore, the inspector, in making his findings, did not in any way indicate that the desertion was a factor in his decision that the relator was not eligible for voluntary departure.[2]

We are, therefore, free to accept the inspector's finding for what it purported to be: a strict application of the rule that the burden of proving good moral character was on the relator.

But the relator was not given adequate notice that he had the burden of coming forward with documentary evidence and oral testimony on the issue of his good moral character. The only notice received by the relator consisted of the presiding inspector's statement to him at the opening of the hearing: "In order to be considered for this privilege you must show that you have been a person of good moral character for at least the past five years."

■ Such language does not provide effective notice to an Italian speaking alien longshoreman, unrepresented by counsel, and addressed through the medium of an interpreter, that he had to prove affirmatively his good moral character, and that it was not sufficient for him to "show" his good moral character by answers denying former crimes.

Indeed, it is difficult to understand how even unambiguous language would have aided the relator. The required proof was called for only a few minutes after the supposed notice of its necessity was given.

■ We need not here consider whether or not discretionary action of the Immigration and Naturalization Service is reviewable. Rather, we are concerned with the relator's right to have that discretionary power exercised after a hearing in which ordinary standards of fairness were observed. Despite any doubts which may have once existed on the matter, see United States ex rel. Salvetti et al. v. Reimer, 2 Cir., 1939, 103 F.2d 777, 779; United States ex rel. Von Kleczkowski et al. v. Watkins,

---

1. The illegal entry itself does not mar his record. Many deportation cases arise from the fact of illegal entry, and it would render the provisions for discretionary relief on demonstration of good moral character meaningless in a sizeable portion of deportation cases if illegal entry were considered sufficient alone to impugn good moral character.

2. Nor does the Board of Immigration Appeals, in disposing of the relator's appeal from the inspector's findings, refer to the desertion. In fact, the Board merely affirmed that the relator was deportable and could not meet the requirements for pre-examination. It did not discuss the request for voluntary departure, the requirements for which are less stringent than for pre-examination.

D.C.S.D.N.Y.1947, 71 F.Supp. 429, 435, it is now accepted that procedural due process must be observed in a hearing even though the alien is invoking relief which is, in any event, afforded only at official discretion. See United States ex rel. Weddeke v. Watkins, 2 Cir., 1948, 166 F.2d 369, 371, certiorari denied 1948, 333 U.S. 876, 68 S.Ct. 904, 92 L.Ed. 1152; Kavadias v. Cross, D.C. N.D.Ind.1948, 82 F.Supp. 716, 718.

A hearing in which the failure of an alien to come forth with evidence establishing his good moral character leads to the conclusion that the alien was ineligible for voluntary departure is not fair when the alien, unadvised by counsel, is not told, in language appropriate to his understanding, that the burden of proof is his, and is not given opportunity to meet that burden. Cf. Whitfied v. Hanges, 8 Cir., 1915, 222 F. 745, 753; Young Bark Yau v. United States, 9 Cir., 1929, 33 F.2d 236.

An order will, therefore, be entered affording the relator a fair and proper hearing on the question of his eligibility for voluntary departure.