MATTER OF REYES

In Deportation Proceedings

A-20004461

*Decided by Board June 30, 1982*

(1) Where a final order of deportation has been outstanding for many years and could not be executed because the respondent went into hiding, at a minimum, a clear and unambiguous showing of prima facie eligibility for suspension of deportation must be made before the Board will favorably consider a motion to reopento apply for such relief.

(2) Even assuming that statutory eligibility for the underlying relief sought is clearly demonstrated, a motion to reopen can bedenied for purely discretionary reasons where a review of the record in its entirety reflects either little likelihood of success on the merits or significant reasons for denying reopening based on the respondent's actions.

CHARGE:
Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer than permitted

ON BEHALF OF RESPONDENT:
Lloyd A. Tasoff, Esquire
Tasoff & Tasoff
10880 Wilshire Blvd., Suite 1220
Los Angeles, California 90024

ON BEHALF OF SERVICE:
Howard Hom
General Attorney

BY: Milhollan, Chairman; Maniatis, Dunne, Morris and Vacca, Board Members

On November 18, 1980, this Board dismissed the respondent's appeal from a decision of an immigration judge denying her motion to reopen deportation proceedings in order to apply for suspensionof deportation under section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1254(a)(1). On April 7, 1982, the United States Court of Appeals for the Ninth Circuit reversed the Board's decision and remanded the case for further consideration. *Reyes v. INS*, 673 F.2d 1087 (9 Cir. 1982). Upon reconsideration, the appeal is again dismissed.

The respondent is a 34-year-old native and citizen of the Philippines. She entered the United States as a nonimmigrant visitor for pleasure on October 30, 1968, and was authorized to remain as a visitor until June 1969.[1] She did not depart.

---

[1] The respondent's application for suspension of deportation (Form I-256A) reflects that

In April 1970, the Immigration and Naturalization Service issued an Order to Show Cause charging the respondent with being deportable under section 241(a)(2) of the Act, 8 U.S.C. 1251(a)(2), as an "overstayed" visitor. At deportation proceedings in May 1970, the respondent conceded deportability and requested only that she be permitted to voluntarily depart from the United States. The immigration judge found the respondent deportable as charged and granted her the privilege of 30 days voluntary departure. His order of deportation became final as no appeal was taken to this Board.

The respondent did not depart from the United States. By her own characterization, she "panicked" and went into hiding. Service efforts to locate her were unsuccessful.

Years passed and the respondent remained in hiding. In September 1977, the respondent's parents entered the United States as lawful permanent residents.[2] In April 1979, her parents and her United States citizen sister filed visa petitions on her behalf. Both second and fifth preference petitions were approved. See sections 203(a)(2) and (5) of the Act, 8 U.S.C. 1153(a)(2) and (5).

On July 23, 1979, the respondent surrendered to immigration authorities. Two days later, she filed a motion to reopen to apply for suspension of deportation, having accumulated while in hiding over 7 years continuous physical presence in this country. Her "extreme hardship" claims were based primarily on the hardship it was alleged would be suffered by her lawful permanent resident parents, who entered this country some 7 years after she had become subject to a final order of deportation. As noted, the immigration judge denied the motion to reopen[3] and an appeal from that decision was dismissed by this Board.

In support of her motion to reopen the respondent submitted her own affidavit and one by each of her parents. The essence of the hardship claim is that her parents are elderly;[4] that they are in precarious health;[5] that she is the only child now living with them; that they depend on her for transportation to doctors, assistance in household chores, and companionship; and that she is their only source of income as the other

---

by January 1969 (less than 3 months after her entry as a visitor), she was employed by an insurance company in Los Angeles. Such employment was inconsistent with her status as a visitor for pleasure.

[2] The remainder of the respondent's seven brothers and sisters who were not already in the United States in 1977 have apparently now entered as lawful permanent residents. One sister is a citizen of this country.

[3] Respondent's counsel was subsequently to concede that the motion presented to the immigration judge was inadequate. Supplemental matters in support of the motion were offered while the immigration judge's decision was initially on appeal before this Board.

[4] The respondent's parents were then 62 years old. They are now in their mid-60's.

[5] It is stated that her father suffers from hypertension, kidney malfunction, heart disease, and glaucoma. No specific health problem is noted as to the respondent's mother.

children have "financial problems as well and cannot help out." No affidavits were submitted from the respondent's brothers and sisters who reside lawfully in this country.

Considering the background of this case (*e.g.*, that proceedings had been final for 9 years when the motion was filed) and the nature of the supporting information submitted, the Board concluded both that an insufficient evidentiary showing of extreme hardship had been presented to warrant reopening and that the unlikelihood of relief being granted in the exercise of discretion warranted dismissal of the appeal.

On review by the Ninth Circuit, it was stated that our ruling on extreme hardship was based on our disbelief of the statements made in the affidavits; that the Board's premature assessment and rejection of the truth of those statements was manifestly unfair; and that disbelieving the statements because of the lack of corroboration "imposed a heavy burden of evidentiary support which [was] inconsistent with the limited screening function served by a motion to reopen." It was further stated that this requirement of corroboration was inconsistent with the requirements of 8 C.F.R. 3.8(a). As the process by which the motion was considered was deemed defective, the case was remanded so that this Board could reconsider whether a prima facie case of extreme hardship was established. The Ninth Circuit further stated that it had grave doubts whether this Board could consider factors other than those pertaining to the establishment of a prima facie case in ruling on a motion to reopen.

We initially note that we do not consider that the corroboration we found lacking in this case imposed a heavy evidentiary burden on the respondent or that such requirement was in violation of 8 C.F.R. 3.8(a), which sets forth the *minimum* requirements upon which a motion can be granted. However, we add that under the factual background of cases such as this, we consider it warranted and reasonable to require a clear, unambiguous showing of evidentiary support to justify reopening with all its attendant delays.

We would clarify that our previous conclusions as to the sufficiency of the affidavits supporting this case had more to do with what was not stated in the affidavits than what was stated in them. Our decision was not principally based on a disbelief of the "facts" set forth in the affidavits. Even accepting the truth of what was stated therein, the affidavits contained significant omissions.

The respondent's parents have seven other children living lawfully in this country. The motion papers do not indicate where the children reside. The affidavits state that the respondent is the only child still residing at home, but they do not indicate that other children could not reside with the parents if absolutely necessary, or that the parents could not reside with any of the many other children. The affidavits state

that the respondent provides care, transportation, and comfort to her parents, but they do not state that such assistance could not be provided by the other children. In fact, the only specific circumstance regarding the other children referenced in the affidavits is that the other family members have "financial problems . . . and cannot help out [with the financial support of their parents]." We did not find it unreasonable to require affidavits to that effect from the other children, who are in a far better position to know whether or not they could assist in the support of their parents if necessary.[6]

As this case had been closed for some 9 years when the respondent sought reopening, we did not consider the nature of the supporting allegations we required to be unreasonable. In view of the time that had elapsed since the final order of deportation, the reason that the order could not be previously executed, and the delays that reopening would necessarily entail, we did not and do not consider it unreasonable, arbitrary, or manifestly unfair to require as a minimum a clear and unambiguous showing of prima facie eligibility for relief before reopening will be favorably considered. Under facts such as those arising here, we do require a significant showing of a likelihood of success on the merits before reopening will be ordered.

Accepting the allegations specifically set forth in the affidavits to be true, but not accepting as true matters not alleged therein, and considering the potential of this respondent to lawfully immigrate to the United States as a result of her approved second-preference visa petition,[7] our conclusion would still be that a prima facie showing of extreme hardship has not been adequately set forth on the record before us.

However, we do not find it essential to reach such a conclusion. Even assuming for the purposes of review that a prima facie showing of extreme hardship is set forth, we specifically decline in the exercise of discretion to order the proceedings reopened.

We recognize that in *Urbano de Malaluan v. INS*, 577 F.2d 589, 593 (9 Cir. 1978), the Ninth Circuit stated that if a prima facie case of eligibility for suspension of deportation was set out in a motion to reopen, it would be an abuse of discretion for the Board not to order the proceedings reopened to allow for a hearing on the merits of the application. In *Jong Ha Wang v. INS*, 622 F.2d 1341 (9 Cir. 1980), and *Villena v. INS*,

---

[6] As noted by the Service in its opposition to the motion to reopen, when the parents entered the United States as lawful permanent residents only 2 years before this motion was filed, it had to have been demonstrated that there was an ability for them to be financially supported. As the respondent was then in hiding under a final order of deportation, this showing could not have been made by reference to her resources.

[7] Her priority date is April 12, 1979. The immigrant numbers for June 1982 reflect that second-preference visas are available to persons charged to the Philippines with priority dates as of April 1, 1979.

622 F.2d 1352 (9 Cir. 1980), this position was reaffirmed by that Court. *See also Choe* v. *INS*, 597 F.2d 168, 170 (9 Cir. 1979). In *INS* v. *Wang*, 101 S. Ct. 1027, 1030 n. 5 (1981), the Supreme Court, however, noted that the regulations regarding reopening are framed negatively and authorize reopening only when certain minimum conditions are satisfied. *See* 8 C.F.R. 3.2 and 3.8. The Supreme Court stated that these regulations do not affirmatively require reopening under any particular conditions and that they "may be construed to provide the Board with discretion in determining under what circumstances a proceeding should be reopened." Circuit Judge Wallace's dissent in *Villena* v. *INS, supra,* regarding this issue was cited with apparent approval. With all deference to the Ninth Circuit's doubts concerning the authority of this Board to deny a motion to reopen a proceeding in the exercise of discretion, we find that the Board has such authority.

A predecessor regulation to 8 C.F.R. 3.2 and 3.8, specifically provided that the grant or denial of a motion to reopen was solely within the discretion of the Board. See *Arakas* v. *Zimmerman*, 200 F. 2d 322, 323 n. 2 (3 Cir. 1952); *Kavadias* v. *Cross*, 82 F. Supp. 716, 719-20 (N.D. Ind. 1948). We do not find the absence of such specific authorization in the present regulation controlling as decisions regarding the reopening of proceedings have traditionally been considered actions within the sound discretion of administrative authorities. *United States* v. *Pierce Auto Freight Lines*, 327 U.S. 515, 535 (1946); *Interstate Commerce Commission* v. *Jersey City*, 322 U.S. 503, 514-15 (1944). *See also Wolf* v. *Boyd*, 238 F.2d 249, 254 (9 Cir. 1957), *cert. denied*, 353 U.S. 936 (1957). Moreover, the controlling regulations (8 C.F.R. 3.2 and 3.8) merely set forth minimum requirements which if not satisfied *preclude* the Board from granting reopening. It is provided that the Board "may" grant reopening in specified circumstances.

The Board has long held that motions to reopen can be denied for purely discretionary reasons. *See Matter of Lam*, 14 I&N Dec. 98 (BIA 1972). The bases for such denials often involved actions by aliens in extending their stays in this country through dilatory tactics or by otherwise flouting the immigration laws, as is the case here. We are unaware of the reversal of any such order on the basis of a lack of authority to deny reopening in the exercise of discretion. Conversely, the authority to deny reopening in the exercise of discretion has been upheld. *See Pang Kiu Fung* v. *INS*, 663 F.2d 417, 419 (2 Cir. 1981); *Lam Chuen Ching* v. *INS*, 467 F.2d 644, 645 (3 Cir. 1972); *Chul Hi Kim* v. *INS*, 357 F.2d 904, 907 (7 Cir. 1966).[8] Most recently, the United

---

[8] This Board's discretionary authority to deny motions to reopen to apply for adjustment of status under section 245 of the Act, 8 U.S.C. 1255, has been affirmed by the Ninth Circuit in *Obitz* v. *INS*, 623 F.2d 1331 (9 Cir. 1980). Although disagreeing with Circuit Judge Tang's ultimate conclusion in his dissent in *Obitz*, we must admit to sharing his

States Court of Appeals for the Sixth Circuit has recognized the Board's authority in this regard. *See Balani* v. *INS,* 669 F.2d 1157, 1161-626 Cir. 1982). The Ninth Circuit has in fact affirmed a recent discretionary denial by this Board of a suspension motion after finding the Supreme Court's decision in *Wang* controlling on the issue of whether such action was authorized.

Finally, we note that it is clear that this Board can pretermit threshold issues of eligibility for relief if we are satisfied that an application would be denied in the exercise of discretion whether or not eligibility is established. *INS* v. *Bagamasbad,* 429 U.S. 24 (1976). This principle has been held applicable in adjudicating motions to reopen. *See Hibbert* v. *INS,* 554 F.2d 17, 21-22 (2 Cir. 1977).

Accordingly, we reaffirm our long-held position that, even assuming statutory eligibility for the underlying relief sought, motions to reopen can be denied for purely discretionary reasons where a review of the record reflects either little likelihood of success on the merits or significant reasons for denying reopeningbased on the respondent's actions.

In this case, considering the record in its entirety, we find that the application for suspension of deportation would be denied in the exercise of discretion. Accordingly, we do not find reopening warranted. In this regard, we consider the following: This respondent has continuously flouted the immigration laws of the United States except when they served her purposes. She entered the United States in October 1968 as a visitor for pleasure and has been out of status since at least June 30, 1969. Her employment before that date suggests she was out of status as early as January 1969, some 60 to 90 days after entry. She requested voluntary departure in May 1970. Although granted such relief from deportation, she did not depart. The respondent has been under a final order of deportation since May 1970. All of her presence in the United States after that date resulted from the fact that she went into hiding and could not be located by the Service. The hardship alleged in this case relates principally to her parents, who did not enter this country until 1977 when their daughter had been under a final order of deportation and in hiding for some 7 years. Further, the respondent's parents have seven other children lawfully residing in this country and the respondent has the potential of lawfully returning to the United States based on her approved second preference visa petition.

Considering these facts in their totality and accepting the matters alleged in the respondent's supporting affidavits to be true, we find that the underlying application for relief should be denied for purely discretionary reasons. No useful purpose would be served by ordering these

---

questions concerning the distinction set forth in the majority opinion between motions to reopen to apply for suspension and those regarding adjustment applications.

long delayed proceedings reopened. Accordingly, the appeal will again be dismissed.

ORDER: On reconsideration, the appeal is dismissed.