**SANG SEUP SHIN, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 84–1097.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 1, 1984.

Decided Dec. 14, 1984.

Starr, Circuit Judge, filed dissenting opinion.

Thomas A. Elliot, Washington, D.C., for petitioner.

Michael P. Lindemann, Washington, D.C., for respondent. Richard K. Willard, Acting Asst. Atty. Gen. and Thomas W. Hussey, Asst. Director, Dept. of Justice, Washington, D.C., were on the brief, for respondent.

Before GINSBURG and STARR, Circuit Judges, and JACKSON,* District Judge.

---

* Of the United States District Court for the District of Columbia, sitting by designation pursu-ant to Title 28 U.S.C. § 292(a).

Opinion for the Court filed by Circuit Judge GINSBURG.

Dissenting opinion filed by Circuit Judge STARR.

GINSBURG, Circuit Judge:

Sang Seup Shin, a Korean citizen, seeks review of an order of the Board of Immigration Appeals (BIA or Board). The order under review denied Shin's motion to reopen his deportation proceeding to allow him to apply for adjustment of his status to that of a permanent resident. The Board regarded the application at issue as repetitive of a prior motion to reopen Shin had made. In denying the instant motion, the BIA referred solely to the reasons already stated in its rejection of Shin's earlier reopening request. But Shin featured two linked events occurring *after* the Board's prior ruling: his wife's attainment of United States citizenship; and approval by the Immigration and Naturalization Service (INS) of an "immediate relative" visa petition she filed on his behalf. Because the Board failed to acknowledge the existence of these new circumstances and thus did not address their significance, we are unable to affirm the Board's order. We remand the case so that the BIA may supply a reasoned, evenhanded response to Shin's altered situation—his current status as an "immediate relative" of a citizen of the United States.

I.

Shin entered the United States in November 1972, as a nonimmigrant visitor for business. He did not depart upon the expiration of his visa in March 1973. On the petition of a company that sought to engage Shin as a truck mechanic, the INS, on September 19, 1973, accorded him sixth preference immigrant classification. Based on this preference, on December 14, 1973, Shin applied for status as a permanent resident. Twenty-two months later, on September 17, 1975, the INS denied his application because the agency's inquiries impugned a representation Shin had made concerning his employment when he applied for his nonimmigrant business visa. On October 21, 1975, Shin was found deportable and was granted permission to depart voluntarily by January 5, 1976. On the same day, October 21, 1975, Shin filed a motion to reopen his application for permanent residence; in this filing, he sought to substantiate further the veracity of his representations about prior employment. Shin requested, but did not receive, a stay of deportation pending disposition of this motion. He did not depart on the appointed day. The INS denied the motion to reopen on February 7, 1977.

Shin married a naturalized United States citizen, his second wife,[1] in January 1977. She filed a petition for an "immediate relative" visa, but withdrew it in July 1978, after the marriage failed. The INS issued a warrant of deportation on August 11, 1978, and ultimately ordered Shin to report for deportation on July 5, 1979. Shin failed to appear.

Shin married his present wife, then a lawful permanent resident, in June 1980. She filed a petition for second preference immigrant status on his behalf in July 1980. *See* 8 U.S.C. § 1153(a)(2) (1982). The INS granted her petition on June 23, 1981. On June 15, 1981, Shin was taken into custody under a warrant of deportation, but was released under an order of supervision. Shin thereupon filed an application to stay deportation pending consideration of his simultaneously filed motion to reopen to permit him to apply for political asylum, suspension of deportation, and reinstatement of voluntary departure. The immigration judge granted the stay. Eventually, on March 11, 1982, the judge denied reopening, citing Shin's failure to submit affidavits or other evidence demonstrating either the "extreme hardship" that might qualify him for suspension of deportation, *see id.* § 1254(a)(1), or the "well-founded

---

**1.** Shin's first marriage, to a woman who remains in Korea, ended in divorce by decree dated December 15, 1976.

fear of persecution" that might warrant asylum. *See id.* §§ 1101(a)(42)(A), 1158(a). The BIA affirmed on June 15, 1982.

From August 1981 through June 1982, Shin reported in person each month to an INS deportation officer pursuant to his order of supervision. In July 1982, INS ordered Shin to report for deportation on August 2, 1982. Prior to that date, Shin again moved to reopen, this time limiting requested relief to suspension of deportation. On August 11, 1982, the District Director stayed Shin's deportation pending resolution of this motion.

The BIA denied reopening on January 18, 1983. It gave two reasons for its decision. First, the Board found that Shin had failed to make a prima facie showing of "extreme hardship" to himself or his spouse, a statutory prerequisite for suspension of deportation under 8 U.S.C. § 1254(a)(1). Second, the Board denied Shin's request for relief as a matter of discretion because he had "flouted the immigration laws." *In re Sang Seup Shin*, No. A20–484–414, slip op. at 3 (BIA Jan. 18, 1983) (*"Shin I"*).[2] Shin did not appeal this decision. He was ordered to report for deportation on May 24, 1983.

▇ Some months after the BIA's January 1983 decision, on May 13, 1983, Shin's spouse became a naturalized United States citizen. On June 7, 1983, she petitioned for Shin's classification as an "immediate relative," a status that would exempt him from numerical limitations on immigration visas. 8 U.S.C. § 1151(b) (only "children, spouses, and parents of a citizen of the United States" can qualify for "immediate rela-

tive" status). Shin simultaneously applied for adjustment of status. The INS approved "immediate relative" immigrant classification for Shin. The BIA, however, treating Shin's request for adjustment as a motion to reopen his deportation proceeding,[3] summarily denied relief in an October 31, 1983, order. Shin's petition for review challenges the Board's October 1983 disposition as an abuse of discretion.

## II.

Shin has applied for discretionary relief—adjustment of his status—under the Immigration and Nationality Act. *See* 8 U.S.C. § 1255; *infra* note 6. Regulations promulgated under the Act permit reopening his deportation proceeding, so that he may apply for such relief, on a showing of "circumstances which have arisen subsequent to the [deportation] hearing." 8 C.F.R. § 3.2 (1984); *see also id.* § 242.22. Shin rests his claim on two such circumstances—his wife's attainment of United States citizenship and the attendant INS determination of his "immediate relative" status. The material documenting these circumstances "was not available and could not have been ... presented" earlier. 8 C.F.R. §§ 3.2, 242.22.

▇ The BIA unquestionably has wide discretion in determining what circumstances warrant reopening a deportation proceeding. *See INS v. Jong Ha Wang*, 450 U.S. 139, 143 n. 5, 101 S.Ct. 1027, 1030 n. 5, 67 L.Ed.2d 123 (1981) (per curiam). We review Board dispositions in cases of this kind[4] only to ensure that administrative discretion has not been abused. *E.g., Chae*

---

**2.** Shin at no time concealed his identity. Nor did he ever hide or flee from the grasp of the immigration authorities. *Cf. In re Reyes*, 18 I. & N. Dec. 249 (BIA 1982) (denying reopening as a matter of discretion because petitioner had gone into hiding). During seven of the ten and one-half years that transpired from the expiration of his original visa to the denial of reopening under review here, Shin had pending bona fide motions or petitions seeking permanent residence.

**3.** Once the INS serves an order to show cause why an alien should not be deported, the alien

may apply for adjustment of status only in the procedural setting of the deportation proceeding. *See* 8 C.F.R. §§ 245.2(a)(1), 242.22 (1984).

**4.** Denials of motions to reopen deportation proceedings are among the "final orders of deportation," which, under 8 U.S.C. § 1105a(a), courts of appeals are empowered to review. *Cheng Fan Kwok v. INS*, 392 U.S. 206, 216–17, 88 S.Ct. 1970, 1976–77, 20 L.Ed.2d 1037 (1968); *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964), *rev'g per curiam* 308 F.2d 347 (9th Cir.1962) (per curiam).

*Kim Ro v. INS*, 670 F.2d 114, 116 (9th Cir.1982); *Sida v. INS*, 665 F.2d 851, 854 (9th Cir.1981). Broad as the BIA's discretion is, however, that tribunal may not act arbitrarily or irrationally. It may not proceed at whim, shedding its grace unevenly from case to case. It must explain departures from settled policies, *see Wing Ding Chan v. INS*, 631 F.2d 978, 983–84 (D.C. Cir.1980) (citing *Wong Wing Hang v. INS*, 360 F.2d 715, 719 (2d Cir.1966)), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1371, 67 L.Ed.2d 349 (1981); and it may not unaccountably disregard on one day considerations it held relevant on another day. *E.g., Luna v. INS*, 709 F.2d 126 (1st Cir.1983); *Batoon v. INS*, 707 F.2d 399, 401–02 (9th Cir.1983); *Chae Kim Ro*, 670 F.2d at 116; *Sida*, 665 F.2d at 854–55; *Prapavat v. INS*, 662 F.2d 561 (9th Cir.1981) (per curiam) (on rehearing in light of *Wang*).[5]

■ The BIA's exercise of discretion in ruling on reopening motions is linked to its projection of the likelihood that the applicant would be granted the relief sought if reopening were permitted. *In re Rodriguez-Vera*, 17 I. & N. Dec. 105, 106 (BIA 1979). In this case, the Board pretermitted consideration of Shin's statutory eligibility for status adjustment;[6] the BIA found it could bypass "threshold issues of eligibility for relief" because it was "satisfied that [Shin's status adjustment] application would be denied in the exercise of discretion whether or not eligibility is established." *In re Sang Seup Shin*, No. A20–484–414 (BIA Oct. 31, 1983) (*"Shin II"*). In so ruling, the Board relied solely and explicitly upon the "reasons stated" in its January 18, 1983, opinion denying reopening to afford Shin an opportunity to gain suspension of deportation.[7]

In its January 1983 ruling, the BIA did not question Shin's satisfaction of the statutory requirements of presence in the Unit-

5. We share our dissenting colleague's discomfort with the nation's convoluted immigration laws and their uncertain, inefficient, or protracted administration. We find his large assault on the validity of motions to reopen unwarranted, however. Affording aliens the opportunity to present new evidence is securely within the Attorney General's authority to provide procedures for the just administration of the laws governing immigration. *See* 8 U.S.C. § 1103(a). In any event, no party to this proceeding has invited us to overthrow or undermine the provision for motions to reopen. *See, e.g., Wang*, 450 U.S. at 140–41, 101 S.Ct. at 1029 ("The Act does not expressly provide for a motion to reopen, but regulations promulgated under the Act allow such a procedure.").

More troubling is the general postulate, proffered by the dissent, that judicial deference should be greatest where an agency exceeds its statutory authority. *See* dissent at 131. Logically, in such a case, the need for judicial scrutiny would be greater than where administrative power is confined by Congress' guidance. Our system of laws requires evenhanded adjudication, not administrative indulgences unchecked by congressional limits or judicial review.

6. 8 U.S.C. § 1255(a) provides:

The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjust-

ment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

Shin has applied for adjustment of status and, by virtue of his wife's approved petition for "immediate relative" classification, it appears that he is eligible for and has immediately available an immigrant visa.

7. The substance of the BIA's decision is contained in its last paragraph, which reads:

On January 18, 1983, we dismissed an appeal from the denial of an earlier motion to reopen by the respondent for the purpose of applying for another discretionary form of relief, suspension of deportation. One basis for that action was our finding that his application and motion did not merit approval as a matter of discretion. [Citation omitted.] For the reasons stated therein, we reach that same conclusion with regard to the instant motion and application for discretionary relief. Accordingly, the motion will be denied.

The BIA's October 1983 decision thus rests on the discretionary aspect of its prior ruling. Because the Board's precedents call for a balancing of relevant factors in light of the relief sought, *see supra* p. 125; *infra* note 12, we canvass other facets of its January 1983 decision for matters it may have weighed. The dissent's suggestion that the Board may halt upon finding adverse factors seems inconsistent with the Board's current precedents.

ed States for the last seven years and good moral character for the same period, *see* 8 U.S.C. § 1254(a)(1), but it rejected his claim that deportation to Korea would occasion "extreme hardship."[8] The Board observed that Shin's skills as a mechanic should help him to find employment in Korea; that sale of the couple's home and car should, together with bank accounts and other assets, lessen economic detriment; that a letter from his wife's physician, although stating that she should avoid stressful conditions, failed to detail the seriousness of her malady (hypertension) or show that adequate medical care was unavailable in Korea; and that, in light of the INS's approval of second preference visa status, even if Shin were deported to Korea, any resulting separation from his wife would be temporary. *Shin I,* slip op. at 2–3. (The observation that separation would be "temporary" does not acknowledge that once an involuntary deportee leaves the country, there is a statutory bar to his return for five years. 8 U.S.C. § 1182(a)(17); *see Luna,* 709 F.2d at 127.)

The BIA ruled additionally that reopening should be denied as a matter of discretion, because Shin "has flouted the immigration laws of the United States except when they served his purpose." *Shin I,* slip op. at 3.[9] As evidence, the Board cited the year Shin's original visa expired (1973), the month and year of his deportation order (January 1976), and his failure on two occasions to leave when granted the privilege of voluntary departure. *Id.*[10]

We do not suggest that the BIA must rule de novo on each of a series of petitions to reopen a deportation hearing. When circumstances have not changed or significant newly discovered evidence is not presented,[11] it may well be an appropriate economy simply to refer back to reasons already stated even when a second petition entails relief (*e.g.,* adjustment of status) less demanding or exceptional than that sought earlier (*e.g.,* suspension of deportation).[12] But that is not the situation here. Shin did not merely seek a different, more common form of relief—adjustment rather than suspension. He based his petition on events postdating the opinion the Board gave as its entire explanation for turning him away. We are obliged to conclude, on the record before us, that the BIA failed to give due consideration to factors the Board itself has identified as pertinent to the exercise of its discretion. *See, e.g., Luna; Batoon; Chae Kim Ro,* 670 F.2d at 116.

It is true that the Board's January 1983 opinion touched on Shin's marriage, but only in the context of finding hardship insufficiently extreme. Moreover, that opinion contemplated that Shin's wife might return to Korea with him, to find employ-

---

**8.** To be eligible for discretionary suspension of deportation, an alien must be one who

has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of [his] application [for suspension], and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence . . . .

8 U.S.C. § 1254(a)(1).

**9.** *But cf. supra* note 2.

**10.** The Board also ventured that Shin's motions were designed to prolong his stay pending processing of his June 1982 visa application by the United States consul in Canada. *Shin I,* slip op. at 3–4. Unless INS granted "permission to reapply" for admission, 8 C.F.R. § 212.2(a), however, Shin would be required to remain outside the United States five years before the visa could be granted. 8 U.S.C. § 1182(a)(17); 8 C.F.R. § 212.2(a).

**11.** *See* 8 C.F.R. §§ 3.2(a), 242.22.

**12.** The Board has indicated that a favorable ruling is generally appropriate in adjustment cases where substantial equities, such as the imminent grant of "immediate relative" status, outweigh adverse factors. *In re Cavazos,* 17 I. & N. Dec. 215 (BIA 1980); *In re Garcia,* 16 I. & N. Dec. 653 (BIA 1978); *In re Arai,* 13 I. & N. Dec. 494 (BIA 1970). The balance struck where the statutory concern is visa availability, we note, may appropriately differ from the balance where "extreme hardship" is the guide. *Compare Garcia,* 16 I. & N. Dec. at 656–58 (adjustment), *with In re Reyes,* 18 I. & N. Dec. 249 (BIA 1982) (suspension).

ment and obtain medical care there. The opinion nowhere addressed the relevance of United States citizenship, should Shin's wife attain that status, as she now has. In view of the "most precious right" Shin's wife has acquired, *see Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 159, 83 S.Ct. 554, 562, 9 L.Ed.2d 644 (1963), the supposition that she would sell her assets and leave the country, if it ever had validity,[13] bears reexamination. Of principal concern to us, however, is the very heavy weight the Board, on other occasions, has said it attributes to the United States citizenship of a petitioner's spouse.

In *In re Ibrahim*, 18 I. & N. Dec. 55 (BIA 1981), the BIA recognized that "[t]he Immigration and Nationality Act makes immediate relative status a special and weighty equity." *Id.* at 57. The Act, the Board noted, exempts "immediate relatives" ("the children, spouses, and parents of a citizen of the United States") from numerical limitations on immigration visas. 8 U.S.C. § 1151(b). Further, an "immediate relative" is exempt from denials of adjustment in status founded on unauthorized employment. 8 U.S.C. § 1255(c)(2); *see also* 8 C.F.R. § 242.5(a)(2)(vi)(A), .5(a)(3) (duration of voluntary departure privilege is extended for immediate relatives). The special position of "immediate relatives" was the sole basis upon which the BIA squared denying adjustment of status to Mr. Ibrahim, whose United States-citizen sister obtained approval of a fifth preference visa petition for him, with granting adjustment to an otherwise similarly situated alien in *In re Cavazos*, 17 I. & N. Dec. 215 (BIA 1980). Specifically, the BIA said: "In view of this most favorable status accorded by Congress, we believe it appropri-

ate to accord greater weight to immediate relative status than to visa-preference status when making discretionary determinations under the Act." *Ibrahim*, 18 I. & N. Dec. at 58.

We are cognizant that marriage to a United States citizen does not, as a matter of law, entitle a deportable alien to reopening for adjustment. *See Riasati v. INS*, 738 F.2d 1115, 1118 (10th Cir.1984); *Obitz v. District Director of the INS*, 623 F.2d 1331 (9th Cir.1980). In both *Riasati* and *Obitz*, courts affirmed BIA denials of motions to reopen where the Board relied on prior denials; in each case, however, the BIA had evidently already taken into account citizenship of the petitioner's spouse and imminent entitlement to "immediate relative" status. In neither *Riasati* nor *Obitz*, we note, did the BIA utterly fail to consider a "substantial and weighty equity"; nor was there a salient change in status, such as that identified by the Board in *Ibrahim*, underlying either Riasati's or Obitz's second petition to reopen.[14]

The BIA has judged "immediate relative" status, about which it was silent in Shin's case, to be on a higher plane than visa preference status, which it did consider. Because of its silence, we do not know whether the Board has changed course, whether it considers its exposition in *Ibrahim* distinguishable, whether it believes failing to depart twice is a per se offense which defeats even "substantial and weighty equit[ies]," or whether the BIA has acted without reason. What determines rights in one case the Board may not ignore in the next.[15] Discretion does not mean license. We grant the petition for review, vacate the BIA's order, and

---

**13.** One might ask whether, had Shin been admitted for permanent residence, the BIA would similarly suppose he would follow his wife abroad upon her deportation.

**14.** Similarly, in *Hibbert v. INS*, 554 F.2d 17 (2d Cir.1977), a decision featured by the dissent, the absence of new evidence justified the Board's denial of reopening: the imminent citizenship of the petitioner's spouse had already been presented to the Board there. Here, in contrast, the Board never mentioned any steps taken by

Shin's wife toward naturalization. Instead, it focused on the prospect of her return to Korea to resume her residence, and live together with her spouse, in that country.

**15.** Decisions designated by the Board, which include all those published in *Administrative Decisions Under Immigration & Nationality Laws, see* 18 I. & N. Dec. at v (1983), are binding precedents until overruled. 8 C.F.R. §§ 3.1(g), 103.3(e).

remand the case to the Board with directions to consider and determine the proper weight to be given the United States citizenship attained by Shin's wife, and Shin's acquisition of "immediate relative" status, in light of the BIA's statement of position in *Ibrahim.*

*It is so ordered.*

STARR, Circuit Judge, dissenting:

I respectfully dissent. In my judgment, the Board of Immigration Appeals (BIA) acted properly within its discretion in refusing to reopen Mr. Shin's deportation proceedings.

1

The majority's decision rests principally upon the BIA's failure in its October 31, 1983, order to discuss the new factor of Mr. Shin's wife's having become a United States citizen, an event which occurred after the BIA had denied Mr. Shin's earlier motion to reopen. That prior motion, aimed at suspending deportation proceedings, was denied by the BIA in a comprehensive order dated January 18, 1983. In denying relief, the BIA there determined, *first,* that Mr. Shin had failed to establish extreme hardship and, in so concluding, took expressly into account the circumstances of Mr. Shin's present spouse, whom the Board observed was "a lawful permanent resident of the United States." Order of January 18, 1983 at 1.

But the Board did not stop there. After finding no extreme hardship, the Board went on to determine, *second,* that "significant reasons exist for denying reopening, in the exercise of discretion, based on [Mr. Shin's] actions. [Mr. Shin] has flouted the immigration laws of the United States except when they served his purpose." *Id.* at 3. In setting forth a bill of particulars in this respect, the BIA emphasized the fol-

lowing: (1) Mr. Shin had remained in the United States in an illegal status since 1973; (2) he was granted the privilege of voluntary departure on two occasions, in 1975 and 1976, and on each occasion failed to depart; (3) he had been under a final deportation order since January 1976; and (4) it appeared to the Board that Mr. Shin's "various motions at this point in the proceedings [were] designed to prolong his stay in this country pending the processing of his visa in Canada." *Id.* at 4. The BIA's order, it bears noting, was final and appealable but no appeal was taken.*

It was this second ground for rejecting Mr. Shin's earlier motion—the willful disobedience of United States law—upon which the BIA *exclusively* relied in denying relief in the order under review. Nothing has changed in this respect. Mr. Shin stands here now, as he did before the BIA last fall, with a final, unappealed from determination that he has "flouted the immigration laws of the United States." He does not here, nor did he before the Board, advance any new facts in this respect; in consequence, the BIA's second ground for denying relief in January 1983 stands unaffected and unassailable by the happy occurrence of Mrs. Shin's having since become a U.S. citizen.

There can be no doubt that it was this second ground—willful disobedience of federal law—upon which the Board relied in denying relief in this latest round of maneuvering. The Board's order is crystal clear:

> One basis [for the January 1983 denial of relief] was our finding that *his application and motion did not merit approval as a matter of discretion.* For the reasons stated therein, we reach that same conclusion with regard to the in-

---

* I do not offer this in an effort to assert that Mr. Shin is, by virtue of preclusion doctrines, estopped from attacking the BIA's determination. His flouting of the laws of the United States was an alternative determination, and since either of the two alternative grounds for the BIA's decision in the Order of January 18, 1983, would have been sufficient, neither standing alone is,

arguably, conclusive. *Cf.* RESTATEMENT (SECOND) OF JUDGMENTS § 27 comment i (1982). However, Mr. Shin's disrespect for United States law was specifically asserted by the BIA as the ground for denying relief in the Order of October 31, 1983. Mr. Shin's wife's new status has, as I will seek now to show, no effect on that ground.

stant motion and application for discretionary relief.

Order of October 31, 1983 (citation omitted) (emphasis added).

That explanation is entirely sufficient. In a word, Mrs. Shin's new-found status is utterly beside the point; the Board has ruled that, as a matter of discretion, it will not entertain a request for discretionary relief because of Mr. Shin's own checkered past of failing time after time to comply with applicable law.

### 2

If we must go beyond this basis for the Board's action—a ground that I find completely adequate and independent of Mrs. Shin's status to support the Board's order—we then move to the significance of her new status. In my view, it is here that the majority's reasoning is fraught with potential mischief for future cases, as opposed to reflecting simply what I believe to be a misapprehension of the basis of the Board's action.

To begin, let us take note again of the background of this case. Mr. Shin has been illegally present in the United States for over a decade. He has evinced no intention whatever to leave, notwithstanding his illegal status and clear and binding directives to him to depart. He has been taken into custody in order to effect his departure, but through the exercise of discretion was permitted by INS to make other, voluntary arrangements for departing. He still did not leave. His present marriage (his third) occurred seven years into his period of unlawful residence, and five years after he first agreed to depart voluntarily.

And the likelihood of his wife's eventually becoming a U.S. citizen could scarcely have been unknown to the Board in January 1983 when it denied the earlier request to reopen deportation proceedings. The BIA indicated at the outset of its opinion that Mrs. Shin was "a lawful permanent resident of the United States" and noted that she had filed a visa petition on Mr. Shin's behalf, which had subsequently been approved. Her citizenship, coming a few

months later, was no new evidence; it was, in the words of the Second Circuit, merely "the natural consequence[ ] of her earlier virtual completion of the naturalization process." *Hibbert v. INS*, 554 F.2d 17, 21 (2d Cir.1977). *Hibbert* is, in fact, highly instructive. There, the Second Circuit upheld a BIA determination not to reopen deportation proceedings, even in the face of the petitioner's wife's having become a U.S. citizen and the fact that the petitioner, in the interim, had become the father of a U.S. citizen child. In language that rings true here, the court flatly rejected the attack on the Board's refusal to reopen:

> On the final application to the Board to reconsider its decision not to reopen, there was no new evidence. [The wife's] citizenship and the birth of [the] child were the natural consequences of her earlier virtual completion of the naturalization process and her pregnancy, all of which was known to the Board at the time of the first motion to reopen.

*Id.* at 21. As does Mr. Shin, Mr. Hibbert strenuously maintained, correctly, that marriage to a citizen is a "factor of significance" to the INS or, in the words of *In re Ibrahim*, 18 I. & N. Dec. 55 (BIA 1981), relied upon here by the majority, "a special and weighty equity." Like Mr. Shin, Mr. Hibbert argued that this new equity could support a favorable exercise of discretion by the BIA and that the case should thus be remanded to the Board.

But the Second Circuit was unmoved. The court flatly rejected this request as "without merit" because, critically, Mr. Hibbert's "immigration history amply supports the discretionary refusal to waive deportation." 554 F.2d at 21. Under those circumstances, the court concluded, it would be pointless to remand to determine his technical eligibility since the end result was destined to be deportation.

Here, as in *Hibbert*, a remand to consider the "special and weighty equity" of Mr. Shin's post-deportation-order marriage to a U.S. citizen—when the factor of that marriage had earlier been taken into account—is an exercise in futility, for the Board is properly within its broad discretion in refusing to reopen deportation proceedings of

venerable length by virtue of the applicant's history of flouting the immigration laws. Indeed, as the *Hibbert* court noted, it was on this ground that the Supreme Court reversed, in a *per curiam* opinion, a Court of Appeals determination that the statute required the immigration judge to make findings as to the applicant's eligibility for the requested status (admission into the country as a permanent resident). The Supreme Court held flatly that such a determination would have been "purely advisory" and, absent a statutory requirement to the contrary, such advisory findings and conclusions simply could not be required of INS by the judiciary. *INS v. Bagamasbad,* 429 U.S. 24, 25–26, 97 S.Ct. 200, 201, 50 L.Ed.2d 190 (1976).

Here, in effect, the majority is directing the Board to issue an advisory opinion as to the applicability of *Ibrahim.* But, as in *Hibbert* and *Bagamasbad,* there is no need for the exercise, no matter how enlightening and edifying a new opinion from the Board might be, for the Board has spoken, finally and decisively. It will not hear further from Mr. Shin no matter how many equities he may amass, for he stands charged and convicted, administratively, of deliberately flouting this Nation's laws.

### 3

In the judicial quest for reasoned administrative decision-making, we have today taken a salutary principle of law and applied it in a setting where, in my view, it simply does not fit. The immigration laws are unique, an act of fundamental sovereignty quite unlike administrative regulation of natural gas sales or activities in the communications industry. Congress, which continues periodically to examine this set of laws which have aptly been compared to the labyrinth of ancient Crete, has nowhere provided for the procedural vehicle invoked by Mr. Shin. One will sift through this labyrinthine maze of immigration laws and find not a word about motions to reopen deportation proceedings. Congress clearly knows how to provide for motions to reopen, such as petitions for reconsideration, in administrative settings, and has done so with regularity, but it did not do so in this unique area of sovereign national interest.

It is within the inherent power of an administrative agency to reconsider its actions, *see Dawson v. Merit Systems Protection Board,* 712 F.2d 264, 267 (7th Cir.1983), but there is fairly to be inferred a congressional mandate that deportation proceedings, while comporting with elementary values of fairness and decency, are to be accomplished with dispatch.

That mandate is flouted daily throughout the Nation, to the point that it has become a truism in public discourse on the subject that this Nation has lost control of its borders. Not only does the Nation seem powerless to curb the tide of illegal immigration in the first instance, but the process of returning whence they came those who are now illegally here has become so protracted and complicated that the cost of an able immigration lawyer is in effect a ticket of admission permitting those unlawfully here to remain indefinitely. *See, e.g., Rios-Pineda v. INS,* 720 F.2d 529 (8th Cir. 1983), *cert. granted,* — U.S. ——, 105 S.Ct. 562, 83 L.Ed.2d 503 (1984). The INS has itself contributed measurably to this enervation, as the saga of the case at hand itself shows. The INS apparently felt that it knew better than Congress, so it drew up a regulation providing administratively for the procedural vehicle that the Article I branch never saw fit to enact. (And, stays of deportation at critical junctures in this drama were granted in two instances, once by an immigration judge and once by an INS District Director.) Then, the Article III branch has seen fit over the years to incorporate a wide body of judicial teaching on administrative decision-making that seems to me wildly misplaced. Today's decision is but part of that development, unfolding case by case, the end result of which is immobilism in enforcement of these most fundamental of laws. And even a change in today's result would do little to eliminate the administrative and legal barnacles that have turned the immigration laws and their administration into what our elected representatives not infrequently disparage as a national disgrace.

And thus, as so frequently happens, a confession of error within the judiciary contains in it the prayer for relief from the

representative branch whose will seems so politely but nonetheless emphatically trammeled in the inexorable extension of the administrative state.

These broader observations lead me, in closing, back to a narrower point. Since Congress itself has not, in the unique area of immigration regulation, seen fit to provide for motions to reopen deportation proceedings, I should think we would be highly deferential to the Board, particularly where, as here, the petitioner had previously, without success, availed himself of a motion to reopen. The Board's discretion, in my view, is at its zenith in making a discretionary procedural determination which Congress did not see fit to enact. That discretion was exercised entirely appropriately here, given the blemishes of studied noncompliance with law that mar Mr. Shin's record, laws of a Nation where he so earnestly and understandably desires to stay. He has been here illegally since 1973. He was first found deportable in 1975; now, almost a decade later as 1985 approaches, his quest to remain in the United States under the protective umbrella of the laws he chooses day by day to violate continues with what seems to be a powerful life of its own.

I would affirm the Board's order.